ALFRED BOLING V. STATE OF NEBRASKA.

FILED JUNE 12, 1912. No. 17,469.

1. **Rape:** CORROBORATIVE EVIDENCE. "In a prosecution for the crime commonly called statutory rape, where the prosecuting witness testifies positively to the facts constituting the crime, and the defendant as positively and explicitly denies her statements, her testimony must be corroborated by facts and circumstances established by other competent evidence in order to sustain a conviction." *Mott v. State*, 83 Neb. 226.

2. ———: ———. The unsupported testimony of a prosecutrix that the crime with which a defendant is charged was repeated subsequent to the alleged commission of the principal offense is not corroborative of the testimony of the prosecutrix as to the commission of the offense charged.

3. ———: EVIDENCE: ADMISSIBILITY. Corroboration of the testmony of the prosecutrix, as to the commission of the crime charged, on May 6, 1911, was furnished by the testimony of her sister, a young woman 20 years of age. *Held*, That the letter referred to in the opinion, written by the older sister to the defendant more than one month after the time when, as testified by her, the crime was committed upon her younger sister in her presence, was proper evidence to go to the jury upon the question of the credibility of the writer of such letter, and its exclusion was prejudicial error.

4. **Marriage:** EVIDENCE. Marriage may be proved by the oral testimony of those who were present, including the parties thereto. If such proof is necessary, it is not required that the record of the issuance of the license and of the marriage be produced.

ERROR to the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Reversed.*

*Lambert & McCarty,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

REESE, C. J.

Plaintiff in error, whom we will hereafter refer to as defendant, was prosecuted in the district court for the crime of rape upon the person of one Dollie Hager, a female child under the age of 15 years; defendant being over 18 years of age. The jury returned a verdict of guilty, and he was sentenced to the penitentiary for a term of six years. He prosecutes error to this court.

The case is a most peculiar one, and perhaps there is no other like it. Defendant and Dollie Hager are first cousins. At the time of the alleged rape, she was between 13 and 14 years of age. There seems to have been a strong attachment between .them. A short time preceding the night of the alleged rape, defendant proposed marriage to Dollie, and was met by the answer that she was too young to marry. The day before the alleged rape, they drove to the home of an uncle and aunt of Dollie, and remained there all night. An elder sister of Dollie, who was about 20 years of age, was at the home of the aunt when they arrived, and the three remained there. Two bedrooms are referred to in the evidence, one of which was occupied during the night by the uncle and aunt. In the other there were two beds, one of which was occupied by the two girls, and the other by defendant and two young men or boys of the ages of 15 and 17, members of the family. The night was stormy, with rain, lightning and thunder. The elder sister occupied the front side of the bed in which the girls slept, with Dollie in the rear side next to the partition between that room and the one occupied by the uncle and aunt. The aunt was ill, and the elder sister had been with the family for some days assisting in her care and the care of the household. It was testified by both girls that during the night defendant left the bed where he was sleeping, passed over the elder sister near the foot of the bed, placed himself between the two girls, and committed the crime on the younger girl, the elder being awake during the whole time and

Boling v. State.

knowing and realizing the full purport of his act, but making no objections and offering no protest; that he returned to his bed and remained until morning, but no reference was had to what it is said had occurred. That afternoon, with the knowledge of the elder sister, the defendant and Dollie returned to her home, and she testified that the intercourse was repeated there, none of the family being at home. All intercourse prior to a subsequent marriage in Kansas was denied by the defendant in his testimony, and no testimony was offered to prove any such intercourse in this state after the marriage. After their return to Dollie's home, they went to a neighbor's where Dollie's mother was, and returned to the home with her. Some two weeks thereafter defendant, with the knowledge and consent of the family, including the elder sister, started with Dollie to Kansas City, where his mother, who was the aunt of Dollie, resided. When they arrived at the city of Atchison, Kansas, they stopped, put up for the night at a hotel, being assigned separate rooms, and the next day they were married, the age of Dollie being misrepresented in order to obtain the license and marriage. They then went on to Kansas City, where they remained for a time with defendant's mother. He returned to Nebraska and to the family. Dollie was taken sick with appendicitis, and on her return home was taken to Omaha, where an operation for that disease was performed upon her. After defendant's return he informed the mother of Dollie of their marriage, but she objected to the marriage and forbade defendant's presence at her home. Soon thereafter the elder sister reported what is alleged to have occurred, and defendant's arrest and conviction followed.

It is not our purpose to discuss the evidence, nor to unnecessarily cast any reflections upon any witness, and therefore the evidence will not be considered, except so far as may be necessary in the disposition of the alleged errors which are presented.

Under the law of both Nebraska and Kansas the mar-

riage is void on account of the relationship between the parties. The charge contained in the information is as to the act said to have been committed at the home of the . uncle and aunt when the bed was occupied by the two girls. During the trial Dollie was asked if defendant had intercourse with her at any other time about the date of the act referred to, and, over the objection of defendant, was allowed to testify that on the next evening upon their return to her home the act was repeated within the kitchen, no one else being at home. This evidence was admitted as corroborative evidence tending to corroborate the evidence as to the bed assault, which had been testified to by both the prosecutrix and her elder sister. The court also by two instructions instructed the jury to the same effect. This action is assigned as error. Under the rule stated in *Woodruff v. State*, 72 Neb. 815, and *Leedom v. State*, 81 Neb. 585, proof of the commission of the other offense, by competent testimony, is admissible. We do not wish to be understood as holding otherwise; no thought of doing so. But the question here is: Is the unsupported testimony of the prosecutrix of other criminal acts competent as corroborative evidence? In other words, can the uncorroborated evidence of other offenses, testified to by the prosecutrix alone, corroborate her testimony as to the principal fact? Can she by her unsupported testimony corroborate herself?

In *Mott v. State*, 83 Neb. 226, which was a case similar to this, it is said at page 230: "As to the nature of the corroboration necessary to sustain a conviction in such cases, the authorities seem quite clear. Where the law requires the corroboration of a witness, it must be accompanied by other evidence than that of the witness himself. His own acts or statements do not constitute corroborative evidence. *State v. Kingsley*, 39 Ia. 439; *State v. Lenihan*, 88 Ia. 670; *State v. McGinn*, 109 Ia. 641. Facts, whether main or collateral, must be established by competent testimony before they become of probative force in a lawsuit; and it is self-evident that the main fact in

this case cannot be strengthened by a collateral fact, the existence of which is dependent upon the same class of testimony."

In *Mills v. Commonwealth*, 93 Va. 815, which was a prosecution for seduction, in discussing the essentials of corroborating testimony in such cases, it is said: "It is sufficient here to say that it must be evidence which does not emanate from the mouth of the seduced female; that it must not rest wholly upon her credibility, but must be such evidence as adds to, strengthens, confirms, and corroborates her."

As we have seen, the elder sister testified that she was in the bed with the prosecutrix; that defendant got in bed between them; that with her knowledge of every act performed, including defendant's preparation for the crime—in removing or pulling up the nightgown—to the completion of the gratification of his desires and remaining for a time in the bed between them, she made no effort to prevent the act, nor in any way to protect her younger sister; that she refrained from reporting the facts that night or the next day and for a comparatively long time thereafter; that she allowed defendant to take the sister home—a distance of some eight miles; that she offered no objection or protest to her accompanying him to Kansas City; and that she said nothing about the alleged occurrence until after she learned of the marriage.

As a part of her cross-examination she identified a letter written to defendant, signed by her, and mailed to him after the marriage, but before she knew of the fact. The letter was offered in evidence at various stages of the trial, both as a part of the cross-examination and in support of the defense, but, upon objection of the state, it was excluded. It abounded in expressions of affection and the use of endearing terms. It need not be here set out in full. At the close she says: "I think of you in daytime, I dream of you at night. I am wearing my heart away for you Alford dear. Well, I will close for this time. Hoping to hear from you soon. Yours sincere. With love and kisses. Answer soon." (Signed.)

This letter should have been received in evidence for the consideration of the jury in arriving at the weight to be given to her testimony. The criminal act is charged to have been committed on the 6th day of May, 1911, and the letter was written and dated June 19, following. If the testimony of herself and Dollie is true, she knew at the time of writing the letter that defendant had polluted and debauched her sister. It was for the jury to say whether with that knowledge and the recollection of the event on her mind she would have written such a letter. The fact of writing and sending the letter is not conclusive of the falsity of her testimony, nor do we say, as a matter of law, that it should impair its weight, but it should have been submitted to the jury for such consideration as affecting her testimony as they might see proper to give it.

Copies of the records of the county judge of Atchison county, Kansas, showing the issuance of the marriage license and the marriage of defendant and Dollie Hager were offered and received in evidence over the objection of defendant, and of which he complains. While the evidence is, ordinarily, deemed competent, and in some instances essential to prove marriage, yet the subject is not entitled to serious consideration here. It was not essential to the proof of the marriage, for the fact was testified to and admitted by defendant on more than one occasion. The admission of the documents was not necessary. Moreover, the fact of the marriage was not an essential element of the state's case. That the act charged occurred at or about the time alleged, the ages of the parties being proved, and that it was committed within the jurisdiction of the court, constituted the essence of the case. Neither the record of the marriage, nor the copy of the law of Kansas declaring the marriage of first cousins void and incestuous, could do more than incumber the record.

Other alleged errors are assigned, but which it is not deemed necessary to notice, as they may not occur upon a subsequent trial.

For the error in instructing the jury that the evidence of the complaining witness of other acts of intercourse corroborated her testimony as to the act charged, and the exclusion of the letter referred to, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.

ROSE, J., dissenting.

I am fully convinced that the jury in this case arrived at their verdict through the consideration of competent testimony alone, and that it can safely be said, in the light of the entire record, that the result would have been exactly the same had the trial court, in every particular, ruled according to the suggestions of the majority in the opinion. The jury voluntarily recommended the shortest sentence authorized by law for the felony charged and were not prejudiced against defendant. In my opinion, the conviction should not be set aside for any reason given by the majority.