LARRY MEDLEY, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA,
DEFENDANT IN ERROR.
54 N. W. 2d 233

Filed June 27, 1952.   No. 33177.

*Leon A. Sprague,* for defendant in error.

*Clarence S. Beck,* Attorney General, and *Charles Thone,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

A jury found the plaintiff in error, hereafter called defendant, guilty of rape. He was 17 years old at the time of the alleged offense; the prosecutrix was then 18 years old and without mental or physical disability. Defendant's motion for new trial was overruled and the trial court sentenced him to a term of four years in the penitentiary, from which he prosecuted error to this court.

The defendant's assignments of error will be taken up in the order in which they are presented.

The defendant contends that the evidence as to resistance by the prosecutrix and corroboration thereof was not sufficient to sustain a verdict of guilty, and the court erred in not sustaining the defendant's motion for a directed verdict.

It appears from the record that the prosecuting witness is a single woman 18 years of age, employed by a telephone company, and residing in an apartment with a roommate employed by the same company. She is 5 feet 3 inches in height and 110 pounds in weight. On November 4, 1951, she met Robert Steele, 15 years of age, and Gale Shields, 16 years of age, at a skating rink in Kearney. She had been acquainted with Shields for a year and a half or two years and on one occasion went on a date with him. She talked to Shields. He and some other boys had been hunting and he asked her if she wanted to go with him after a rabbit. She told him she would tell him later. Shortly after 10 p. m., Shields returned and again asked her about going after a rabbit. She agreed, and left the rink with Shields. They went to a car driven by the defendant, which was a two-door Chevrolet. She and the three boys got into the car and proceeded to the telephone office to enable her to inform her roommate as to what she proposed to do, and that she would return shortly after 11 o'clock. They drove to the Shields home where he got the rabbit and put it in the car. They then decided to get some coffee. One of the boys suggested that they go to

the Mystery Oil Station. Upon arriving there they found the station closed. They decided then to go to Gibbon, and were unable to procure coffee there. They then went east of Gibbon to a bus station which was also closed. They started back to Kearney, and when they arrived two or three miles west of Gibbon the defendant turned off the highway to the north, proceeding in that direction two or three miles, then turned west and soon parked the car in a driveway. The boys started to tell dirty stories and then filthy stories. The prosecutrix did not patricipate in the story telling. Eventually one of the boys said: "Either you give peacefully or we're going to take it." At first she did not realize what they were talking about, and one of the boys again repeated the statement. She replied that she was "not going to give a thing." The boys then endeavored to persuade her. She argued with them and finally persuaded the defendant and Steele to leave the car. She remained in the car with Shields and felt that she might have some influence over him because she knew him. She told him such an act was sacred and holy, and asked him if he did not believe so. He reiterated the statement that she would "give peacefully or they were going to take." The defendant and Steele returned to the car and the defendant got into the back seat. The boys in the back seat each took hold of one of her arms. Steele reached over the front seat and endeavored to unbutton her sweater. The prosecutrix was then struggling and fighting, and trying to kick Steele away. During this time she bit one of his fingers. Momentarily the struggle ceased and a match was lit to ascertain how badly he was injured. Steele then got into the back seat. During the struggle the boys pulled her hair, twisted their legs around her legs so that she could not kick, and proceeded forcibly to remove her clothing. This struggle lasted for about 30 minutes when, the prosecutrix testified, she became exhausted. The defendant and Steele held her legs while Shields tried to have inter-

course with her, but failed to accomplish the act. The defendant then attempted to have intercourse with her and she fought until she "kind of blacked out." She testified that when she came to her senses she was screaming and pushing the defendant "for all I was worth" until she was so weakened she could not fight any more, then the defendant did have intercourse with her.

There is evidence on cross-examination to the effect that she removed her coat and it was folded carefully and put in the front seat so that it would not become soiled, and that her clothes were also placed in the front seat; that two cars passed in close proximity to where they were parked, but this is in dispute; that it was cold and the windows were closed; that the boys ceased struggling with her to permit her to get some chewing gum out of her purse, roll down the window, and throw the wrapper outside; and that she did not scream. This was explained as being to no avail because there was no one to hear but she did cry.

There is also testimony of a physician who examined prosecutrix to the effect that he saw no evidence of trauma, bruises or abrasions, or tearing; that the prosecutrix was normal; and that there was no hysteria. There is also testimony to the effect that her clothes were not torn or soiled.

There is testimony that the defendant told the chief of police that "We rassled with her about fifteen minutes" and she acted like she was "played out." Also, that she could not have helped herself, and that she pushed the defendant off. The same type of statements were made by the defendant to the sheriff.

The boys returned the prosecutrix to her home at 2 a. m. Her roommate testified that she was hysterical and sobbing. Prosecutrix told her that she had been raped. The roommate reported the matter to the police later the same morning.

In a case of this kind, the degree of force required is relative, depending upon the particular circumstances,

but in any such case it must be sufficient to subject and put the dissenting woman within the power of the man, and thus enable him to have carnal knowledge of her, notwithstanding good-faith resistance on her part. In that connection, whether carnal knowledge was forcible and against her will or with her consent, is ordinarily indicated by resistance or lack of it by the woman. While the degree of resistance required is also relative, depending upon the particular circumstances, the general rule is that a mentally competent woman must in good faith resist to the utmost with the most vehement exercise of every physical means or faculty naturally within her power to prevent carnal knowledge, and she must persist in such resistance as long as she has the power to do so until the offense is consummated. See, Cascio v. State, 147 Neb. 1075, 25 N. W. 2d 897; Prokop v. State, 148 Neb. 582, 28 N. W. 2d 200, 172 A. L. R. 916.

"In a prosecution for rape, it is not essential to a conviction that the prosecutrix should be corroborated by the testimony of other witnesses as to the particular act constituting the offense. It is sufficient if she be corroborated as to material facts and circumstances which tend to support her testimony, and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn." Fager v. State, 22 Neb. 332, 35 N. W. 195. See, also, Prokop v. State, *supra;* Hughes v. State, 154 Neb. 86, 46 N. W. 2d 904.

Whether or not the prosecutrix resisted advances of the defendant to the extent of her ability under the circumstances presented by the evidence is a question of fact, and where her testimony, if believed, would indicate that she had so resisted, a verdict based on such testimony will not be set aside. See Starnes v. State, 148 Neb. 888, 29 N. W. 2d 795.

We conclude that the jury was justified in returning a verdict of guilty as charged, and the defendant's assignment of error cannot be sustained.

The defendant contends the trial court erred in over-

ruling his motion for a change of venue. The basis alleged for change of venue is that in the principal newspaper of Kearney, Buffalo County, which has a wide circulation, several articles were published with reference to the arrest of the three boys and the crime charged against them; an article was published with reference to the preliminary hearing at which the evidence of the prosecutrix was related to some extent and most of the persons present consisted of high school students and friends of the boys involved; and a letter was written by an unknown person criticizing the newspaper for the manner in which it handled its publication on the subject. Also as a basis for a change of venue was a statement by a local radio announcer to the effect that fathers of girls should arm themselves with guns. Just what this broadcast in its entirety disclosed is not in the record.

Section 29-1301, R. R. S. 1943, provides that all criminal cases shall be tried in the county where the offense was committed unless it shall appear to the court by affidavits that a fair and impartial trial cannot be had therein; in which case the court may direct the person accused to be tried in some adjoining county.

In this case no affidavits were presented and no showing was made otherwise that a fair and impartial trial could not be had. There is no showing that an effort to get such affidavits or make such a showing was made.

The rule is that a motion for a change of venue in a criminal case is addressed to the sound discretion of the trial court, and its ruling thereon will not be disturbed unless an abuse of such discretion is disclosed. See Sundahl v. State, 154 Neb. 550, 48 N. W. 2d 689.

The motion for change of venue was properly denied.

The defendant contends the trial court erred in overruling defendant's motion to dismiss the case for the reason that the State had failed to prove venue.

The defendant argues that the only evidence establish-

ing venue is that of statements of an accomplice made in the absence of the defendant. We have heretofore set forth the evidence with reference to where the defendant drove in company with the prosecutrix and his two friends. There is no dispute in the evidence in this respect. One of the boys, not the defendant, accompanied the chief of police and pointed out the place where the car stopped. This corresponds with the evidence of other parties as to where the car stopped. The chief of police testified that this place was in Buffalo County. We see no reason why this evidence would be inadmissible in the light of all the other evidence relating to venue. There is no denial but that all of the parties were together. The following authorities are applicable.

In Clarke v. State, 125 Neb. 445, 250 N. W. 551, following Weinecke v. State, 34 Neb. 14, 51 N. W. 307, the court held that: "The venue of an offense may be proved like any other fact in a criminal case. It need not be established by direct testimony, nor in the words of the information, but if from the facts in evidence the only rational conclusion which can be drawn is that the crime was committed in the county alleged, the proof is sufficient." See, also, Clark v. State, 151 Neb. 348, 37 N. W. 2d 601; Kirkendall v. State, 152 Neb. 691, 42 N. W. 2d 374. Defendant's assignment of error is without merit.

The defendant contends the trial court erred in overruling the defendant's motion for new trial on the showing made at the hearing thereon.

It appears the defense had exhausted its peremptory challenges with respect to jurors. The trial court directed that a talesman be called, which the sheriff did from persons present at the trial. This talesman, it appears, had on occasions been a special officer at a dance hall run by private persons and his services were paid for by such persons. He was never deputized as a special deputy sheriff nor did he ever receive any remuneration from the county for any services rendered in its behalf. There is nothing to show that this talesman

ever discussed the case at any time with the sheriff or any other person. It is true that he visited the sheriff's office occasionally. He gave his occupation as a farmer. He was not interrogated as to any other occupation he might have had. He qualified as a juror. The trial court was justified in regarding the failure to interrogate this juror as to any other occupation he may have had as a waiver of the same. See Hickey v. State, 12 Neb. 490, 11 N. W. 744.

Opportunity for prejudice or disqualification of jurors is not sufficient to raise a presumption that they exist. See, § 29-2006, R. R. S. 1943; Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349; Ringer v. State, 114 Neb. 404, 207 N. W. 928.

This assignment of error is without merit.

The defendant contends the trial court erred in over-ruling the defendant's motion to withdraw a juror and discharge the jury because of misconduct of the county attorney and because the chief of police was improperly permitted to testify concerning statements alleged to have been made by the defendant.

It appears from the record that when the boys were bringing the prosecutrix home they held a conversation to the effect that another woman, on a previous occasion, did not resist to the extent the prosecutrix did. This evidence was objected to and the objection sustained. However, the county attorney again asked the question and it appears in the record that this evidence might have been admitted. We do not approve of evidence of this kind being offered and admitted. From a review of the same, and under the circumstances shown by the record, we do not find it was so prejudicial as to require a reversal of this case. See Melcher v. State, 109 Neb. 865, 192 N. W. 502.

Upon the entire record there is no error prejudicial to the accused, and the judgment of the district court is affirmed.

AFFIRMED.