DELORES ANN LOCKMAN, APPELLEE, v. ROBERT FULTON, APPELLANT.

76 N. W. 2d 452

Filed April 20, 1956. No. 33875.

*Herman & Van Steenberg,* for appellant.

*Leo F. Bolin,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Complainant, Delores Ann Lockman, hereinafter called plaintiff, brought this filiation proceeding against defendant, Robert Fulton, under the provisions of sections 13-111 and 13-112, R. R. S. 1943, seeking an adjudication that defendant was the father of her unborn child as alleged, and to recover a judgment against defendant for the amount of plaintiff's medical and other expenses of her pregnancy and confinement together with such other relief as might be just and equitable. Defendant's answer denied that he ever had any sexual intercourse with plaintiff, denied that he was the father of her unborn child, and prayed for dismissal of plaintiff's action. The issues were tried to the court without a jury in conformity with section 13-112, R. R. S. 1943, whereupon a judgment was rendered finding generally in favor of plaintiff and against defendant, and adjudging that defendant was the father of plaintiff's

unborn child. Further findings pertinent to the issues were taken under advisement. In such respect, section 13-112, R. R. S. 1943, provides in part: "Should it be determined in this proceeding that the alleged father is actually the father of the child, a judgment shall be entered declaring such to be the case. In the event that such a judgment is entered, the court shall retain jurisdiction of the cause, and enter such order of support as may be proper under the procedure and in the manner specified in section 13-106." Thereafter, defendant's motion for new trial was overruled and he appealed, assigning in effect that: (1) The trial court erred in the admission of certain evidence over objections of defendant; and (2) that the findings and judgment were not sustained by the evidence but were contrary thereto and contrary to law. We sustain the assignments.

After plaintiff had rested her case, defendant moved to direct a verdict for the reason that plaintiff's testimony lacked sufficient corroboration. In that connection, section 13-112, R. R. S. 1943, provides in part: "The uncorroborated testimony of the mother shall not alone be sufficient to support a verdict or finding that the alleged father is actually the father." Thereupon plaintiff was permitted, over objection of defendant, to withdraw her rest and recall her mother for further examination in an effort to establish sufficient corroboration. Thereat, over objection by defendant, plaintiff's mother was permitted to testify that right after September 9, 1954, she had a conversation with plaintiff in defendant's absence whereat plaintiff made statements and declarations telling her the particulars about plaintiff's sexual intercourse with defendant on the night of August 14, 1954, when conception allegedly occurred. Subsequently, plaintiff rested again and defendant's motion to direct a verdict was renewed but overruled. Such a motion was not made or renewed at conclusion of all the evidence. Defendant argued here that the

admission of such testimony was erroneous. We sustain that contention.

In Stoppert v. Nierle, 45 Neb. 105, 63 N. W. 382, this court concluded that in the absence of statutory permission, the statements or declarations of complainant in a filiation proceeding made by her to third persons out of court and not in the presence of defendant, in which she recited or claimed that defendant was the father of her child, are incompetent and inadmissible as corroboration in her behalf. The rule is controlling here.

However, as held in Western Smelting & Refining Co. v. First National Bank, 150 Neb. 477, 35 N. W. 2d 116: "In a case tried to the court, whether at law or in equity, the presumption obtains that the trial court, in arriving at decision, considered such evidence only as was competent and relevant, and this court will not reverse a case so tried because other evidence was admitted." Therefore, such testimony of plaintiff's mother will not be considered here, and the sole question remaining for decision is whether or not plaintiff's testimony was otherwise sufficiently corroborated as required by law. We conclude that it was not.

Recently, in State ex rel. Klostermeier v. Klostermeier, 161 Neb. 247, 72 N. W. 2d 848, this court held: "The uncorroborated testimony of the mother of a child born out of wedlock is not sufficient to support a verdict or finding that the alleged father is the actual father.

"In an action to establish the paternity of a child born out of wedlock it is not essential to a verdict or finding of guilty that the testimony of the mother shall be corroborated by the testimony of other witnesses as to the act producing conception, but only that she be corroborated as to material facts and circumstances which tend to support her testimony and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn.

"In an action to establish the paternity of a child born out of wedlock, only a preponderance of the evidence is necessary to sustain a conviction.

"In an action to establish the paternity of a child born out of wedlock, a verdict rendered on conflicting evidence will be sustained unless it is clearly wrong." By analogy, such rules have application in a proceeding where the child is conceived out of wedlock but yet unborn.

While a filiation proceeding is penal in some aspects, it is ordinarily considered as civil in· character.. It seems clear, however, that the Legislature enacted ·section 13-112, R. R. S. 1943, requiring corroboration of complainant in order to protect innocent persons wrongfully accused. Hence, we again conclude, as was done in State ex rel. Klostermeier v. Klostermeier, *supra,* that the character and quality of proof of corroboration required is the same in filiation proceedings as in criminal cases, such as rape or assault with intent to commit rape, wherein corroboration of the testimony of the prosecutrix is required.

In Mott v. State, 83 Neb. 226, 119 N. W. 461, this court held: "In a prosecution for the crime commonly called statutory rape, where the prosecuting witness testified positively to the facts constituting the crime, and the defendant as positively and explicitly denies her statements, her testimony must be corroborated by facts and circumstances established by other competent evidence in order to sustain a conviction." In that opinion it is said, citing authorities: "As to the nature of the corroboration necessary to sustain a conviction in such cases, the authorities seem quite clear. Where the law requires the corroboration of a witness, it must be accomplished by other evidence than that of the witness himself. His own acts or statements do not constitute corroborative evidence. * * * Facts, whether main or collateral, must be established by competent testimony before they become of probative force in a lawsuit;

and it is self-evident that the main fact in this case cannot be strengthened by a collateral fact, the existence of which is dependent upon the same class of testimony.

"Again, if it be admitted that the defendant was in the company of the prosecutrix, as testified to by the Grieves girls, and if it be further admitted that the defendant on one occasion at or about June 1, 1907, brought the prosecutrix home in the evening, as stated by the mother, these facts of themselves alone are not corroborative, because they simply mean opportunity, and opportunity is not of itself corroboration." See, also, Boling v. State, 91 Neb. 599, 136 N. W. 1078; Blue v. State, 86 Neb. 189, 125 N. W. 136.

In Roberts v. State, 106 Neb. 362, 183 N. W. 555, this court held: "In a prosecution under an information charging statutory rape, where the prosecuting witness has testified positively to the offense having been committed and the defendant has positively denied committing the offense, testimony of a brother-in-law of the complaining witness that he saw the defendant near the building in which the complaining witness claims said act was committed is not sufficient corroboration of the testimony of the complaining witness to sustain a conviction." In that opinion it is said: "Mere opportunity is not in itself sufficient to corroborate the otherwise unsupported evidence of the complaining witness."

Also, in Robbins v. State, 106 Neb. 423, 184 N. W. 53, this court held: "In a prosecution charging rape, other direct testimony than that of the prosecutrix, as to the particular act which constitutes the offense, is not essential to make a corroboration of her story, but corroboration may consist of the proof of such surrounding facts and circumstances as will support her testimony against the accused as to the principal fact, and as will identify the accused as the party guilty of the crime. It may consist of circumstantial evidence. The conduct and demeanor of the accused may furnish such corroboration." Also, as said in that opinion: "It is

necessary that there be some evidence of an incriminating character, more than such mere opportunity to commit the crime, which, aside from the statements of the prosecuting witness, must point to its commission and to the identity of the accused as the person who has committed it."

As stated in Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380: " '* * * corroboration may consist of the proof of such surrounding facts and circumstances as will support her testimony against the accused as to the principal fact, and will identify the accused as the party guilty of the crime. It may consist of circumstantial evidence. Nabower v. State, 105 Neb. 848; Koutouc v. State, 104 Neb. 580; Day v. State, 102 Neb. 707; Hammond v. State, 39 Neb. 252.' Robbins v. State, 106 Neb. 423, 184 N. W. 53.

" ' "Where, in a prosecution for assault with intent to commit rape, prosecutrix testifies unequivocally to facts which would constitute the offense, a sufficient corroboration is shown if opportunity and inclination, on the part of the defendant, to commit the offense are shown, and the circumstances proved by other witnesses tend to corroborate the testimony of prosecutrix." Aller v. State, 114 Neb. 59.' Lewis v. State, 115 Neb. 659, 214 N. W. 302."

In other words, circumstances, if material and competent, may corroborate plaintiff's testimony, and opportunity, disposition, or inclination are circumstances which may be considered together with other material and competent facts and circumstances which tend to corroborate her testimony, but mere opportunity alone is insufficient corroboration to support a finding or verdict and judgment that defendant is actually the father of complainant's child. Further, if the testimony of plaintiff with regard to the principal fact is so inconsistent, contradictory, improbable, or incredible as to be self-destructive, or if the corroborative evidence is of a like doubtful character or wholly lacking in pro-

bative force or value, a finding or verdict and judgment of guilty will be respectively set aside and reversed.

In the light of such rules we have examined the record which substantially discloses as follows: Plaintiff was 19 years old and lived with her father, mother, and seven other children at Minatare. Her father was not employed. Plaintiff was taken out of school in the seventh grade because she was unable to advance. She had known defendant 2 or 3 years and claimed to have gone out with him 5 or 6 times. Defendant, who lived at Minatare but worked up in Banner County and came home only on week ends, had been a chum of her older brother since about 1948, and such brother testified as a witness for plaintiff that he had never seen plaintiff out with defendant during all of their acquaintance. Further, defendant positively denied that he ever was out with plaintiff or ever talked to her except when other members of plaintiff's family were present or nearby.

Plaintiff testified that on Saturday night, August 14, 1954, while she was at home with her three younger brothers, defendant came to their house and she then voluntarily had sexual intercourse with him out behind the barn. Her parents were not then at home and when they returned about 9:30 or 10 p. m. and went in the house, plaintiff followed them right in and defendant left for town. Plaintiff claimed that she never had sexual intercourse with any other man before and that upon such occasion it was the only time she had ever had such relations with defendant. In that regard, defendant denied positively that he ever had sexual intercourse with plaintiff.

Defendant also testified that sometime in June 1954 plaintiff had asked him if he wanted to take her out sometime, and upon his refusal, telling her that he wanted nothing to do with her because she was dumb, she replied that it would not be the first time she did because she had such affairs with all of her brothers. Also, on one occasion in the latter part of June 1954

defendant testified that he heard one of plaintiff's sisters teasing plaintiff about what she and her two brothers had been doing over at the sugar factory and out at the end of the beet row. Further, on another occasion one Sunday sometime in June 1954, when plaintiff's parents were gone, plaintiff's brother and others got in defendant's car and defendant drove his car out to plaintiff's home where they saw plaintiff come out of the house with a strange white man. At that time also an Indian was there sitting in a car in their yard. Such latter occasion was corroborated by a disinterested witness who twice the same day there observed such two men. He first saw plaintiff and such white stranger come out of the barn together and upon returning later he also saw plaintiff and such stranger come out of the house together. Such evidence heretofore recited in this paragraph stands undenied in this record.

Plaintiff testified that after August 14, 1954, she did not know that she was pregnant until she was taken to her doctor in November, at which time she learned that she was 2½ months pregnant. Such date could coincide with her claim of conception August 14, 1954. However, plaintiff also inconsistently testified that she had talked with defendant about her pregnancy on the 10th or 11th of September 1954, at which time she had confirmed that she was pregnant. Be that as it may, plaintiff's doctor testified that he actually first examined plaintiff on October 15, 1954, and then found that she was 2½ months pregnant, which would make the date of conception about the latter part of July or the first of August 1954. Her doctor also testified that he examined plaintiff again on December 17, 1954, and estimated that she was then 6 months pregnant, farther advanced than he had anticipated, which would make the date of conception about the middle of June 1954. He also examined plaintiff on March 22, 1955, and found her pregnancy more advanced than he had thought. He thought she was then within 3 or 4 weeks of what ap-

peared to be a full normal term of 280 days, which if true would make the date of conception about the middle of July 1954. He also testified that if the date of conception was August 14, 1954, the date of birth would be about May 17, 1955, but that the birth of what looked like a full-term baby would actually occur before that date. In that connection, the rule is that where in a filiation proceeding, in order for defendant to be guilty, the birth of the child would be or must have been premature, the burden is upon plaintiff to establish by a preponderance of the evidence that the child alleged to have been conceived by such intercourse will be or was a premature birth. Souchek v. Karr, 78 Neb. 488, 111 N. W. 150, cited with approval in Hudson v. Hudson, 151 Neb. 210, 36 N. W. 2d 851. We find no competent evidence in this record which could support a finding that the birth of plaintiff's unborn child would be premature.

Plaintiff's mother also testified that their doctor examined plaintiff the first time in November and that they then learned she was 2½ months pregnant. The mother testified that defendant was frequently with the family; that he frequently visited the family home; that she had seen defendant's car there on numerous occasions and could identify it; that on August 14, 1954, between 9:30 and 10 p. m., when she and her husband came home, she saw defendant's car in their yard; and that the yard lights were on and she saw plaintiff and defendant come from behind the barn nearby, whereupon plaintiff came in the house and defendant got in his car and left. She had no conversation with defendant at that time, but she claimed that he came back again and she saw him asleep in his car in their yard about 2 a. m. and again about 5 a. m., after which time she had a conversation with defendant in their house about a car wreck which her son had that night. Admittedly, however, nothing was then said by her to defendant about the activities of plaintiff and defendant the eve-

ning before. She also testified that about 2 a. m. that same morning her son, plaintiff's brother, came home with someone else, because defendant had ditched or left him, and that her son then got the family car to take his girl home, at which time defendant was in their yard asleep in his own car; and that her son later that night had a wreck with the family car and when he came home at 5 a. m. defendant was still there asleep in his car. In such respect, her son's testimony was entirely different from that given by plaintiff's mother.

Her son testified that he and defendant were together often and sometimes double dated; that on August 14, 1954, he was with defendant in a tavern at Minatare from about 7:30 to about 9 p. m., when defendant left, saying that he had to go home, and the son took it for granted that defendant was at home until he came back to the tavern about 11:30 p. m. Thereafter, driving defendant's car and accompanied by an unnamed girl, such son and defendant drove to Melbeta together where they stayed until about 1 a. m. when the taverns closed. Thereafter, they drove to Scottsbluff together in defendant's car, and returned to Minatare about 3 a. m. where they took the girl home, and thereafter defendant took the son home, where defendant let him out of his car and defendant left the place. The son testified that defendant did not stay at their place at all on the night of August 14, 1954; and that when he got home he went to bed and defendant left in his own car at that time. In other words, they used defendant's car all evening and the son made no mention whatever of using or wrecking the family car. In that respect, defendant also denied that he ever was out behind the barn with plaintiff or slept in his car in plaintiff's yard on the night of August 14, 1954, and testified that he was with the son at all times during that night and never left him at any time and went to plaintiff's home.

It will be observed that plaintiff's own testimony was

inconsistent and contradictory in material respects, as also was the testimony of plaintiff's doctor, her mother, and her brother, whose corroborative testimony at most established plaintiff's pregnancy and mere opportunity for defendant to be the child's father. There was no competent evidence whatever showing any disposition or inclination by defendant to have sexual relations with plaintiff at any time. Under the evidence and authorities, plaintiff's testimony was corroborated only by opportunity, which of itself is not sufficient corroboration.

We conclude that the evidence was insufficient to sustain the findings and judgment, which were clearly wrong. Therefore, the judgment should be and hereby is reversed. All costs are taxed to plaintiff.

REVERSED.