WESLEY HARMS PEERY, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

80 N. W. 2d 699

Filed January 25, 1957. No. 34062.

*John R. Doyle* and *John E. Wenstrand,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Richard H. Williams,* for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Plaintiff in error, designated herein the accused, was convicted of the crime of rape charged to have been committed on the 21st day of January 1956, upon Mary Billingsley, referred to herein as prosecutrix, forcibly and against her will.

The circumstances of the offense as related on the trial by the prosecutrix include the following:

She traveled by automobile on January 21, 1956, about 11:45 a. m., on U. S. Highway No. 6 when she came to the intersection of it with Highway No. 31 north of the town of Gretna. She turned into the latter and was overtaken and stopped by the accused who was operating an automobile which passed her from the rear and was driven on an angle to the right in front of the car of the prosecutrix in such a manner as to prevent her from going forward. Her car was partly off the

highway when it was stopped. There was no other traffic in view at that place. The accused approached the prosecutrix as she sat in her car with a gun in his hand which he pointed at her and commanded that she quickly get out of her car and come with him. She obeyed, went to his automobile, and got into the front seat of it. He refused her permission to remove her car entirely onto the shoulder of the road. He drove his car back onto Highway No. 6 and then went south, east, and north, in that order, a distance of probably 6 or 7 miles. He stopped on a north-and-south graveled road. She had never seen him before. There was no conversation except accused asked her if she was going to Council Bluffs and she said she was. She asked permission to smoke a cigarette and to remove her coat. He consented; but when she was about to get a match from her purse, he stopped her and required that she use his lighter. After the accused had stopped on the north-and-south highway he removed his topcoat and while he held the gun on prosecutrix he said to her that he was warning her if she resisted him he would kill her. He ordered her to go over the front seat into the back seat of the car and remove a specified part of her clothing. He got in the back seat and asked if she was frightened. She said that she would not fight, that she did not want him to kill her, and that she would feel much better if he put the gun down. He placed it in the front seat. He exacted and secured from her the intimate indulgence he sought. He had held the gun in his hand with its barrel pointed toward her continuously from the time she first saw him until he placed it in the front seat at the time he compelled her to submit to his demands. She did not physically oppose him because he had told her that he would kill her if she did and she believed he had the means in his control to execute the threat he made to her.

She returned to the front seat as he directed and he then demanded money from her. He took her billfold

but returned it when he found it contained only a nominal amount. He expressed disappointment and resentment because she did not have more money. An automobile traveling north passed the car of the accused while it was stopped at the place where prosecutrix was attacked. She did not describe it. The accused drove north on the graveled road an estimated distance of something like 200 yards to a farmstead where there was a mail box near the side of the road. It was not visible from where they had been parked. The prosecutrix saw the car that had passed them near the mail box. A pick-up truck drove out of the farmyard near the mail box. In it were a driver and one other person. There were gas drums or containers visible in the box of the truck. There were persons in the automobile and near the mail box. The accused and prosecutrix passed there about 12:15 p. m. The accused continued to drive north on the north-south road to the first intersection, turned west, and went back to Highway No. 6. He stopped on the road which extended to Highway No. 6 and demanded the name and address of the prosecutrix. She showed him her driver's license. He said he wanted these so that if she told anyone about what had happened, "I'll come across the bridge." Accused returned to where the car of prosecutrix was parked and let her out of his car with a warning that whatever she did she should not look back to see where he was going.

She completed her trip to Council Bluffs, went to the office where she was employed, called her employer, and reported to him the facts of her experience with the accused. Her employer went with her to a police station in Council Bluffs and she complained to a police officer concerning the assault made on her and she related the facts thereof. She went to the office of a doctor in that city about 5 p. m. that day and sought, secured, and submitted to an examination by the doctor.

The foregoing demonstrates that the prosecutrix tes-

tified to the commission of the offense by the accused and that she thereafter, as soon as the situation permitted when she was released from being a captive of the accused, made complaint of the alleged outrage to those to whom a statement of such an occurrence would naturally be made. She complained to her employer, Kenneth Hubler, and immediately thereafter in his presence at the police station in Council Bluffs she complained to Detective Jorgensen of the police force of that city in which she resided and worked. She says she told each of them of the experience she had had and what was done to her, gave a description of the man who she claimed assaulted her and a description of the automobile he was operating, and described to Detective Jorgensen the items and objects she observed in the automobile. There is absence of corroboration of the prosecutrix by either Kenneth Hubler or Detective Jorgensen because neither of them testified at the trial. It is not claimed that they were not available and no attempt to secure them as witnesses is exhibited by the record. The name of neither of them appears on the information. The State cannot escape the adverse effect of the failure to produce these persons and the information they had at the trial if, in fact, the complaints were made to them as the prosecutrix affirms. In such a situation it was the duty of the State to do so.

In Klawitter v. State, 76 Neb. 49, 107 N. W. 121, appears the following: "She (the person who claimed to have been debauched) testifies that when they came home from Melchers two of her brothers saw and talked with the defendant, that when she went to Melchers her sister left her with defendant and went home alone, that after the second act of intercourse she told Mrs. Gutch about it, yet none of these persons were called as witnesses to corroborate her statements. If this evidence was within reach it should have been produced."

It was competent in the circumstances of this case,

after the prosecutrix had testified to the commission of the offense, to prove in corroboration of her testimony as to the main fact that, after the alleged outrage she made complaint concerning it to her employer and to the police officer. This doctrine is set forth in Krug v. State, 116 Neb. 185, 216 N. W. 664: "In a prosecution for rape, the prosecutrix may testify in chief, if within a reasonable time under all the circumstances after the act was committed she made complaint to another, to the fact and nature of the complaint, but not as to its details; and that other may likewise testify in chief to such fact and nature of the complaint, but not as to its details. Such testimony, together with all other facts and circumstances in evidence, may be considered by the jury in corroboration of the testimony of the prosecutrix as to the main fact in issue." See, also, Rhoades v. State, 102 Neb. 750, 169 N. W. 433; Henderson v. State, 85 Neb. 444, 123 N. W. 459, 26 L. R. A. N. S. 1149; State v. Meyers, 46 Neb. 152, 64 N. W. 697, 37 L. R. A. 423; Wood v. State, 46 Neb. 58, 64 N. W. 355. Evidence by another that such a complaint was made by prosecutrix may or may not be corroborative but the jury should be allowed to give it such consideration and effect as it decides is proper in the circumstances of the case. Henderson v. State, *supra*.

The testimony of the prosecutrix that she made complaint to her employer and to the police officer that she had been ravished does not constitute corroboration of her testimony as to the main fact of the alleged offense. The court observed in Fitzgerald v. State, 78 Neb. 1, 110 N. W. 676: "The prosecuting witness says that she was crying afterwards, and that the young lady who was with them observed it, but the young lady herself was not put upon the stand."

The doctor, Frederick E. Marsh, upon whom prosecutrix called late in the day of the assault, was a witness produced by the State. He was not asked to state whether or not the prosecutrix complained to him about

the alleged conduct of the accused towards her. He was asked to tell what examination he made of prosecutrix on January 21, 1956. His answer was an attempt to state that she had told him the history of her experience and that she stated she was not physically hurt in any way. There was an objection to anything the prosecutrix told the doctor. It was sustained by the court and all conversations between the doctor and her were excluded by the ruling of the court. The action of the court in this respect was improper. The doctor as a witness should, upon proper inquiry by the State, have been permitted to state the fact of any complaint prosecutrix made to him concerning the assault that she claimed was made on her that day. Krug v. State, *supra*. The internal examination made of her by the doctor revealed the presence of male fecundating fluid. He found no evidence that she had suffered any trauma, which he explained was bruising, scraping, scuffing, abrasion, or destruction of tissue. He stated he could not tell how long the fluid had been where he found it. The information the doctor gave was that the prosecutrix at some undetermined time probably had experienced intercourse and that she gave no evidence of any injury to her body. It was not corroborative of her claim that the accused had intercourse with her that day, much less that he had forced her to submit beyond her strength or power to resist. It is significant in this connection that the record, by the sworn statement of the prosecutrix, shows that on the preceding Thursday and Friday nights she stayed at the same place as a man she had come to Lincoln to visit and that she left that place Saturday morning at 11 o'clock January 21, 1956, for the trip to Council Bluffs, Iowa. There is no information that any other person was at the place where they stayed and there was no effort to eliminate the male friend of the prosecutrix from the implications of the testimony on that subject. The testimony of Dr. Marsh does not tend to connect the accused with the intercourse

any more than it tends to connect the male friend of the prosecutrix with it. It is also significant that there was no mention by the doctor of the prosecutrix exhibiting the indicia generally present when a female has been the victim of the offense charged in this case such as shock, hysteria, injury to her person, or torn, disarranged, or soiled clothing. The testimony of the doctor is not sufficient to furnish the corroboration necessary to support the verdict.

The prosecutrix said as they drove north on the north-and-south road from the place where she was attacked that they soon came to and passed a mail box and she saw the car there which she said had passed them when they were parked on that road. She did not attempt to describe it or state what view she had of it when it passed them. She said she saw a pick-up truck with "some sort of tank or container on the bed" drive out of the farmyard at that location. There were persons standing near the mail box. She fixed the time as about a quarter after 12 o'clock or "a little after noon." The accused continued to drive north to the first intersection, turned west, and proceeded to Highway No. 6. She did not tell of seeing any other automobile or vehicle after they had passed the mail box until they got back to where she had left her automobile at or near the intersection of Highway No. 6 and Highway No. 31 and near there she saw a car that appeared to be stuck in the ditch of one of the roads that connected with Highway No. 6. This was at least 3 miles west of the graveled road on which she claims she was ravished.

The State examined a farmer by the name of Biel. A north-and-south road was east of his farm. It had a rock surface. He had a mail box east of his house and a driveway from the highway into his farm. He went to the mail box to get his mail about 11 a. m., January 21, 1956, and a Mr. Alberry and a Mr. Smith came from the south in a Chevrolet car, stopped at the mail box, and asked Biel if he had seen any coyote tracks

in the snow that had fallen that morning. At that time a Mr. Boettcher and a Mr. Sawyer came there in a pick-up truck. They stopped and said they were hunting coyotes. There were some bottled gas tanks in the truck. These five men were near the mail box and talked for a few minutes. Three of them were witnesses in the case for the State and none of them said they saw any automobile traveling from south to north pass them on the highway. Biel testified there was no other vehicle in that area while the company of men was near the mail box and while they were conversing.

The occupants of the pick-up truck were Mr. Boettcher and Mr. Sawyer, who was the driver. The former said that they left Gretna at 10 o'clock the morning of January 21, 1956, and returned there at about 11:30 or 12 noon; that they stopped at the mail box when Alberry was there; that they stayed in the area a mile west of the Biel farm and "into that field off of that"; that he saw an older model tan Chrysler "that morning" with a Lancaster County number by which he meant he noticed "the prefix 'Two'"; "That is all I noticed"; that he did not observe whether there was anyone in the car; that he could not say the color of the license plate or for what year it was—1955 or 1956; that the car was about ⅓ of a block from him; that they were after "this coyote" and that was the reason he did not have a better recollection; and that he and Sawyer were crossing the road and he believed the car he saw was moving. He gave no more definite location of the car he claimed to have seen except it was on a road a mile west of Biel's. He did not say the direction it was facing or that it was traveling; neither did he state in what directions the road extended.

The version given by Sawyer was that he was at the mail box when Biel, Boettcher, and Alberry were there; that he drove around the section "west of Bernie Biel's"; that he saw a 1947 or 1948 model tan Chrysler after he had gone from the mail box "one mile west of Bernard's

farm" as he (Sawyer) was driving out of the field onto the road; that there were a man and woman in the front seat of the car; that he saw nothing else about the car; that he was within 15 to 25 feet of it; and that he did not see either the license plate or learn in what state it was registered. He did not say which directions the road extended on which the car was or the direction it was traveling. The automobile the accused was driving on the day of the alleged crime was positively identified as a 1949 model Chrysler.

The testimony of the three witnesses discussed above does not constitute corroboration of the prosecutrix.

The prosecutrix testified that on January 30, 1956, she, in Lincoln, identified the accused as the man who assaulted her; a 1949 model Chrysler automobile as the car operated by the accused at the time of the assault; and six articles in the automobile when she saw it on January 30, 1956, which she said she observed in the car when she was a captive of the accused on January 21, 1956. Her testimony furnished the foundation for their introduction as evidence at the trial except representation of the automobile was by picture which the prosecutrix identified. They were not otherwise connected with the accused or the commission of the offense. What the prosecutrix said or did with reference to any of these was not corroboration. She could not by her own act or statement corroborate herself. In Mott v. State, 83 Neb. 226, 119 N. W. 461, it is said: "As to the nature of the corroboration necessary to sustain a conviction in such cases, the authorities seem quite clear. Where the law requires the corroboration of a witness, it must be accomplished by other evidence than that of the witness himself. His own acts or statements do not constitute corroborative evidence. * * * Facts, whether main or collateral, must be established by competent testimony before they become of probative force in a lawsuit; and it is self-evident that the main fact in this case cannot be strengthened by a collateral

fact, the existence of which is dependent upon the same class of testimony." See, also, Lockman v. Fulton, 162 Neb. 439, 76 N. W. 2d 452; Hudson v. State, 97 Neb. 47, 149 N. W. 104; Boling v. State, 91 Neb. 599, 136 N. W. 1078; Annotation, 60 A. L. R. 1148; 44 Am. Jur., Rape, § 82, p. 952.

The law is firmly established in this state that in a prosecution for the crime of rape, if the prosecutrix testifies positively to the facts constituting the crime and the accused explicitly denies her statements, her testimony must be corroborated on material points by other evidence in order to justify or sustain a conviction. The testimony of the prosecutrix alone is not sufficient to warrant a conviction. Klawitter v. State, *supra;* Fitzgerald v. State, *supra;* Mott v. State, *supra;* Henderson v. State, *supra.* However, it is not essential that the prosecutrix be corroborated by other evidence as to the act constituting the offense. It is required that she be corroborated as to material facts and circumstances which tend to support her testimony as to the principal fact in issue. Cascio v. State, 147 Neb. 1075, 25 N. W. 2d 897; Medley v. State, 156 Neb. 25, 54 N. W. 2d 233; Linder v. State, 156 Neb. 504, 56 N. W. 2d 734. The prosecutrix testified to the commission by accused of the offense charged. The accused unequivocally denied the accusation made against him. The prosecutrix is not corroborated as to any material fact or circumstance which tends to support her testimony as to the principal fact of the crime. The conviction is not supported by the evidence. It is contrary to law and cannot be sustained.

The judgment should be and it is reversed and the cause is remanded to the district court for Sarpy County for further proceedings as provided by law.

REVERSED AND REMANDED.

WENKE, J., dissenting.

I disagree with the holding of the majority of the court to the effect that "The prosecutrix is not corrobo-

rated as to any material fact or circumstance which tends to support her testimony as to the principal fact of the crime"; that is, that the defendant in error, Wesley Harms Peery, whom we shall hereinafter refer to as the defendant, had sexual relations with her on January 21, 1956, forcibly and against her will. It should be understood, in this regard, that while it is required that the prosecutrix be corroborated as to material facts and circumstances which tend to support her testimony as to the principal fact in issue it is not essential that she be corrobarated by any evidence as to the act itself which constitutes the offense.

First, I wish briefly to discuss the inference left by the majority opinion that the State was duty bound to call prosecutrix's employer, Kenneth Hubler, and Detective Jorgensen of the Council Bluffs Police Department, to whom she had made complaint of the offense. I agree that if a situation here existed, as it did in Klawitter v. State, 76 Neb. 49, 107 N. W. 121, that there was no other evidence to corroborate that of the prosecutrix then the State would be required to do so in order to make a case for the jury. But even in such a situation, if the prosecutrix had complained to two or more people, the State would not be required to call all of them as their testimony would only be cumulative. However, if there is other competent evidence to meet the requirements of corroboration then I do not think the State is duty bound to call any of such witnesses, although it may properly do so if it desires. In my opinion the record here presents the latter situation.

Dr. Frederick E. Marsh, a licensed physician engaging in the general practice of medicine at 532 First Avenue in Council Bluffs, Iowa, examined prosecutrix about 5 p. m. on Saturday, January 21, 1956, the day on which the alleged crime was claimed to have been committed about noon. Prosecutrix told him the history of what had happened and he made a pelvic or internal examination. His examination revealed many sperma-

toza or secretion from the male of recent origin, although he would not pin point it as to time, stating it could be 3 or 4 hours one way or another. The majority opinion seems to completely discredit the effect of this testimony by the fact that prosecutrix had been visiting a male friend of hers in Lincoln on Thursday and Friday and stayed alone with him in his home and did not leave there until about 11 a. m. on January 21, 1956. While I think the latter was a fact for the jury to consider it is my opinion that the weight of this evidence was for the jury. It certainly corroborates the fact that someone had recently been intimate with the prosecutrix.

The State also produced witnesses Charles Boettcher and Ronald Sawyer of Gretna, Nebraska, who were hunting coyotes in a Chevrolet pick-up truck near the place in Sarpy County where the prosecutrix said the alleged offense occurred. They testified seeing an older, or 1947 or 1948, model tan Chrysler sedan in the area at about the time the prosecutrix claims they were there. One of them described the car bearing a Lancaster County license and having a man as the driver and a woman as a passenger in the front seat. Prosecutrix, from her slight general knowledge thereof, described the car used by the party committing the act as a cream colored or tan 1947 or 1948 model 4-door Chrysler sedan. Defendant Peery admits that on January 21, 1956, he owned and was driving a 1949 model tan 4-door Chrysler sedan with a Lancaster County license plate. The evidence does not show there is any difference in the appearance of the 1947, 1948, or 1949 model 4-door Chrysler sedans. I think this evidence corroborates the prosecutrix's story.

Prosecutrix testified she observed certain things in the car she was forced to ride in with the defendant from the place where he forced her to leave her own car at the point of a gun to the place where the alleged crime was committed, and then back to her car. That

same day, after she had returned to Council Bluffs, prosecutrix, when she complained thereof to Detective Jorgensen of the Council Bluffs police, gave him a description of the car used by the party perpetrating the alleged crime and described to him the contents thereof. Later, on January 30, 1956, when defendant was apprehended in Lincoln, Nebraska, the car he was then using was identified by the prosecutrix as the one used by the party committing the alleged offense on January 21, 1956, and that defendant was that party. Taken from this car were two maps, a small suitcase, a white painter's cap, and a pink quilt, all of which the prosecutrix identified as being in the car used by defendant on January 21, 1956, plus the gun which was found therein under the front seat and which prosecutrix identified as the one defendant had used to force her to submit. Not only did the police officers of the City of Lincoln identify all of these articles as taken from defendant's car *but defendant himself admits the pink quilt*, sometimes referred to as a blanket or comforter, *the painter's cap, and suitcase were in his car on both Saturday, January 21, 1956, the day the alleged crime was committed,* and on Monday, January 30, 1956, the day he was taken into custody by the Lincoln police. Certainly this corroborates the prosecutrix's story in every way.

I have read and reread this record and it is difficult for me to conceive a stronger case of corroboration could be made than here presented unless the State was fortunate enough to have eyewitnesses to the act, something not required by the laws of this state.

CHAPPELL, J., concurs in this dissent.