MARGARET G. GREGORY, APPELLEE, v. WILLIE L. DAVIS, APPELLANT.

334 N.W.2d 1

Filed May 20, 1983. No. 82-277.

Paul E. Watts of Paul E. Watts & Associates, for appellant.

Clyde A. Christian, for appellee.

McCOWN, HASTINGS, and SHANAHAN, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

SHANAHAN, J.

The question before the court is the sufficiency of the evidence concerning Margaret Gail Gregory's claim that Willie L. Davis is the father of her child. Gail commenced proceedings pursuant to Neb. Rev. Stat. §§ 13-101 et seq. (Reissue 1977) for establishment of paternity. A jury was not requested, and the matter was tried to the court as a nonjury case. The District Court for Douglas County entered judgment that Davis was the father of Gail's child and ordered Davis to pay child support. Davis appeals from the establishment of paternity but does not contest the amount of child support ordered by the trial court.

The paths of the parties crossed at a local motorcycle club in Omaha, Nebraska, during the summer of 1977. It was not until the following summer, however, that Gail and Davis began to see each other rather regularly. Both worked for the same employer, and eventually their contact with each other broadened beyond meetings at their place of employment.

At first there were but joint excursions on a motorcycle, until the first real date late in November 1978. What transpired on that first outing is not disclosed in the record. The second date in November, however, found Gail and Davis at a local motel where the parties engaged in sexual relations. According to Davis, after the encounter in November of 1978, Davis' sexual activity with Gail was limited to two separate occasions, namely, intercourse once in De-

cember of 1978 and relations for the last time on January 16, 1979.

Gail's description of the relationship differs substantially from that offered by Davis. Gail acknowledged the sexual interlude at the motel in November 1978 and recounted that the intervals of intercourse increased immensely, to the point that the parties had relations with each other "most every day" during December of 1978 and January of 1979. The last sexual intercourse between the parties occurred in September 1979. Throughout the entire time, December to September, Gail had sexual relations only with Davis. In March 1979 Gail told Davis that she was pregnant. Although Davis offered to pay for an abortion, Gail refused the abortion.

Gail and Davis continued to see each other until the birth of the child in November of 1979. Before the birth, others witnessed Davis patting the stomach of Gail, who was at the time quite obviously pregnant, and asking Gail, "How's my baby?" Davis visited Gail in the hospital shortly after delivery of the child on November 18, 1979. After the birth of the child, Davis at his place of employment displayed a photograph of the youngster and on several occasions stated that he was the father of the child.

In filiation proceedings only a preponderance of the evidence is necessary to sustain establishment of paternity. See *Lockman v. Fulton*, 162 Neb. 439, 76 N.W.2d 452 (1956). The present case was tried to the District Court without a jury, and in such cases the findings of fact made by the trial court must be given the same effect as a jury verdict. As the "trier of fact," the District Court was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. Among the factors entering into the trial court's resolution of any conflicts of evidence were such items as the respective interests of the parties in the lawsuit; the demeanor of witnesses, including the parties, while testifying before

the court; the apparent fairness exhibited by the witnesses; the extent to which the testimony of the various witnesses was corroborated; and the reasonableness or unreasonableness of statements of such witnesses. Cf., NJI 1.41. Our role in appellate review of the decision of the trial court was expressed in *Stauffer v. Wilson*, 182 Neb. 129, 131-32, 153 N.W.2d 454, 456 (1967): "It is not within the province of this court in a law action to resolve conflicts in or to weigh evidence. If there is a conflict in the evidence this court will review the judgment rendered, will presume that controverted facts were decided by the trial court in favor of the successful party, and the findings will not be disturbed unless clearly wrong. . . . The findings of a court in a law action in which a jury is waived have the effect of a verdict of a jury and will not be disturbed on appeal unless clearly wrong."

Davis is correct that evidence in a filiation proceeding, such as that which we are now called upon to review, must conform with the standards set forth in *Lockman v. Fulton, supra* at 443, 76 N.W.2d at 455, where it is stated: "[C]orroboration of the testimony of the prosecutrix is required." The word *corroboration*, as used in cases of this type, simply means independent evidence which tends to strengthen or otherwise to confirm the testimony of the mother of the child whose paternity is in issue. As expressed in *Lockman v. Fulton, supra* at 444, 76 N.W.2d at 456: " '[C]orroboration may consist of the proof of such surrounding facts and circumstances as will support her testimony against the accused as to the principal fact, and as will identify the accused as the party guilty of the crime. It may consist of circumstantial evidence. The conduct and demeanor of the accused may furnish such corroboration.' " *Lockman* continues at 445, 76 N.W.2d at 456: " '[A] sufficient corroboration is shown if opportunity and inclination, on the part of the defendant . . . are shown, and the circumstances

proved by other witnesses tend to corroborate the testimony of [the] prosecutrix.' . . . In other words, circumstances, if material and competent, may corroborate plaintiff's testimony, and opportunity, disposition, or inclination are circumstances which may be considered together with other material and competent facts and circumstances which tend to corroborate her testimony . . . ."

Davis never denied the fact of sexual relations with Gail but, rather, only the frequency, which, according to Gail, was "most every day" from December 1978 to and including September of 1979. Witnesses verified the conduct of Davis during Gail's pregnancy; the inquiry of Davis about the baby during such pregnancy; gifts given by Davis to Gail during her pregnancy; and the general or at least public relationship which existed between the parties before the birth of the child in November 1979. Such additional testimony of the witnesses in this case certainly fulfills the requirement that there be corroboration of Gail's testimony regarding "opportunity and inclination" on the part of Davis. See, *Lockman v. Fulton, supra*; *Wade v. Hicks*, 191 Neb. 847, 218 N.W.2d 222 (1974).

Davis has suggested a novel but somewhat dubious defense in this case. According to Davis, there had been but one child fathered by him as a result of his sexual relationship or intimacy with any woman before Gail. Such defense and Davis' credibility in general were found to be lacking.

The judgment of the trial court is therefore affirmed.

AFFIRMED.