STATE OF NEBRASKA, APPELLEE, v. DUANE D. WITMER, APPELLANT.

118 N. W. 2d 510

Filed December 7, 1962. No. 35283.

Mitchell & Taylor, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

The defendant was convicted in the district court for Hall County for having committed the crime of incest upon his 17-year-old daughter, Judith Witmer, on September 22, 1961, and has been sentenced to serve a term of 20 years in the State Penitentiary. He has brought the case to this court for review.

Judith Witmer, the prosecuting witness, was born on September 7, 1944, and at the time of the commission of

the act charged was 17 years of age. She testified that on September 22, 1961, she was living with her father, mother, and brother at a natural gas compressor station located 6 or 7 miles northeast of Grand Island, Nebraska, in Merrick County. Her father was the supervisor of the compressor station, her mother worked as a cosmetologist in Grand Island, and her brother worked at the Grand Island Ordnance Plant. The family lived at the compressor station in a home provided by the gas company, which they had occupied for more than 10 years.

On the day in question the defendant, Judith, and her brother, David, ate their evening meal at home. Her mother was working and was not present. After the evening meal David left in his automobile on business of his own. Judith testified that shortly thereafter she and defendant went for a ride in defendant's automobile, the father doing the driving. He proceeded to Eagles Lake near Grand Island in Hall County and there had sexual intercourse with Judith in the back seat of the automobile. Thereafter, about 8:45 p. m., they drove around for 15 or 20 minutes in Grand Island. They passed the beauty shop where her mother worked, waved to her when they saw her standing on the sidewalk in front of the shop, and went on to Frontier Village. There the defendant had two beers and Judith had two bottles of pop, after which they went home. The mother was at home when they arrived. Judith made no complaint to her mother.

Judith testified to a series of acts of sexual intercourse with her father, commencing in May 1959, none of which was alleged to have occurred in Hall County. In Schrum v. State, 108 Neb. 186, 187 N. W. 801, this court stated: "There can be no doubt that proof of facts and circumstances tending to show other acts of intercourse about the time charged in the information is properly admissible in cases of this nature. Leedom v. State, 81 Neb. 585; Woodruff v. State, 72 Neb. 815. This evidence, in order to be corroborative in character, should proceed from other

sources than from the prosecutrix alone. If a witness testifies that criminal intercourse was had upon one day, the fact that she testifies that a like act was had upon another occasion does not corroborate her testimony. Boling v. State, 91 Neb. 599 * * *. The court instructed the jury that the prosecuting witness could not corroborate herself by statements of other acts, and thus the interests of the defendant were protected." See, also, Gammel v. State, on rehearing, 101 Neb. 538, 166 N. W. 250; Fitzgerald v. State, 78 Neb. 1, 110 N. W. 676.

The State asserts that the previous uncorroborated acts of sexual intercourse testified to by a prosecuting witness are sufficient corroboration of the specific act charged to sustain a conviction. The cases of Smothers v. State, 81 Neb. 426, 116 N. W. 152, Woodruff v. State, 72 Neb. 815, 101 N. W. 1114, and State v. Way, 5 Neb. 283, are cited in support of this assertion. The previous acts of sexual intercourse are admissible to show the lustful inclination or disposition of the defendant to commit such acts upon his daughter, and to that extent they may be considered to be corroborative. But such uncorroborated acts testified to by the prosecutrix are not sufficient to sustain a conviction for the offense charged. A prosecutrix cannot by her unsupported testimony corroborate herself. When the law requires the corroboration of a witness, it must be accompanied by other evidence than that of the witness herself. Mott v. State, 83 Neb. 226, 119 N. W. 461.

In a prosecution for incest the evidence of the prosecutrix need not necessarily be corroborated by an eyewitness to the particular act, but it is necessary that she should be corroborated as to the material facts and circumstances which tend to support her testimony and to establish the truth thereof. Such corroboration may be either by direct testimony or by circumstantial evidence. Toth v. State, 141 Neb. 448, 3 N. W. 2d 899; Bridges v. State, 80 Neb. 91, 113 N. W. 1048.

There is no corroboration of the specific offense

charged in Hall County other than the contention of the State that a previous act of sexual intercourse testified to by Judith as having occurred in Merrick County was sufficiently corroborated so as to adequately make it corroborative of the offense charged in the information. This requires a consideration of the facts of the previous act relied upon.

Judith testified that in May 1959, she was working at the family home near the compressor station when her father came home about 2 p. m. She said her father, after a 2-hour struggle, had sexual intercourse with her. During the course of the struggle she ran into the kitchen, picked up a knife, and attempted to use it on him. He took the knife away from her and continued his lustful actions until she gave up and submitted. After the sexual act was completed she dressed, ran to the compressor station office, and asked John Brunken, an employee of the gas company, to help her. She testified as follows: "I told John he had to help me; that fathers just don't do those kind of things to their daughters." When she saw her father coming to the office she ran out the back door. When he went out to find her she came back into the office and hid in a restroom. Her father returned to the office, took her from the restroom, and took her back to the house. Brunken testified as follows: "As near as I can remember, she said my dad done something awful to me. And that she said fathers just don't do that to their daughters, do they? I said, No, I don't suppose they do. She said, I tried to stick a knife in him but he got it away from me. She said, You've got to help me. I told her to call her mother and have her come home." Brunken further testified that Judith called her mother and that he went toward the house when he met the defendant. He asked what was going on and defendant replied that he had mentioned something about sex to Judy and she ran out of the building. He corroborated Judith's testimony about her leaving the office, her return, and defendant

taking her from the restroom and telling her to go home. Another employee, Gordon Backer, testified that he came to the office to work the 4 p. m. shift, that Judith was standing in the office crying, that she ran out the back door when her father came in, that she came back and went into the restroom, and that defendant came in, pulled her from the restroom, and told her to go home and finish the housework.

With reference to this event the defendant testified substantially as follows: He denies that he had sexual intercourse with Judith at this time or at any other time. He says that he came home on the day of the incident and took an afternoon nap. When he awoke Judith was doing some ironing in the kitchen. She called him to the kitchen and told him she had a date that evening. She had been on a date the night before. She was then in junior high school and 14 years of age. Defendant insisted on knowing who the boy was and on discovery that he was a senior in high school and 3 or 4 years older than Judith, he told her she could not go. She became angry and during the argument she drew a knife on him which he forcibly took from her. She ran out of the house. He later followed her out and met Brunken coming toward the house. He walked back to the office with Brunken, who asked him what was the matter with Judy. He told Brunken about Judith wanting to go out with older boys all the time and that she had drawn a knife in the course of the ensuing argument. He said that his wife came home in about 15 minutes. She talked with Judith, who had returned to her ironing. His wife said nothing to him about the incident. The wife testified that Judith said nothing to her indicating the commission of an incestuous act by the defendant. She observed nothing unusual about the home. She said that Judith complained about being scolded by her father. She was not crying. No mention was made of the knife. Her hair and clothes were not rumpled. She did not appear to be emotionally upset.

The evidence of the May 1959 incident, if it is sufficient to corroborate the charge in the instant case, must be of such a character as would support a conviction for incest for the alleged act of sexual intercourse occurring in May 1959. We point out that the corroborative evidence of the May 1959 incident is indefinite and uncertain as to the conduct referred to by Judith when she complained to Brunken and Backer. The nature of the act purporting to have been corroborated was left to speculation and conjecture, which will not support a verdict of guilty. Neither of these two witnesses reported the incident to anyone. Judith's complaints were consistent with the story told by the defendant. It could be that the story told by Judith was an expression of resentment against her father for his refusal to permit her to date with older boys. The alleged corroborative evidence does not sufficiently point to the crime of incest to the exclusion of other conduct of defendant which the prosecutrix may have resented. Judith alleges that defendant had frequent acts of sexual intercourse with her for 3 or 4 years and admits that she complained to no one, not even to her mother.

The crime charged against the defendant, if true, indicates complete moral depravity. It offends the moral senses of the public from which juries are drawn and tends to create sympathy for a young girl alleging a grievance of this magnitude against her own father. The penalty for such a crime is commensurate with the nature of the crime and, if the crime be established, a severe penalty is required to be assessed. But a defendant cannot be properly convicted on the evidence of the prosecutrix alone. There must be corroborative evidence pointing to the guilt of the defendant of the specific crime charged. In the absence of sufficient corroborating evidence, the protection of the innocent demands that the prosecution must fail for want of competent proof. We find the evidence of corroboration

to be insufficient to sustain a finding of guilt by a jury beyond a reasonable doubt.

There is testimony in the record which, if competent and properly admitted, would lead a jury to the verdict it reached. We shall present the situation and point out the reasons why it does not support the verdict.

The State called Ruth Witmer, the wife of the defendant and the mother of Judith, as a witness. She testified in support of defendant's contentions, denying all the assertions of Judith that she had knowledge of incidents tending to sustain Judith's testimony. The county attorney requested the court for permission to treat Mrs. Witmer as a hostile witness. The request was granted. The interrogation of Mrs. Witmer continued. No attempt was made to lay a foundation for her impeachment. In rebuttal, the State thereafter called many witnesses who testified to statements made by Mrs. Witmer which were contrary to the testimony she gave on the witness stand. Among these witnesses was the court reporter who took statements made by Mrs. Witmer when she was interrogated by the county attorney in his office on September 25, 1961. This evidence was erroneously admitted for the reason that no foundation had been laid for its admission during the course of Mrs. Witmer's examination as a hostile witness. In Omaha St. Ry. Co. v. Boesen, 74 Neb. 764, 105 N. W. 303, 4 L. R. A. N. S. 122, this court said: "For the purpose of impeachment, the defendant offered certain portions of the evidence of the same witness given at the first trial. The offer was rejected, and its rejection is now assigned as error. It does not appear that any attempt was made at the second trial to lay a foundation for the impeachment of the witness by calling his attention to the alleged inconsistent statements, or otherwise. The evidence offered was not, under the circumstances, admissible for the purpose of impeachment."

The improper evidence tended strongly to destroy

the credibility of Mrs. Witmer and to indicate that the defendant was guilty of other criminal acts. Even if Mrs. Witmer had been properly impeached, the only legal effect that could have resulted was a finding that she was not worthy of belief. Such impeaching evidence, even when it is properly admitted, is not competent as substantive evidence of the facts to which such statements relate. In a similar situation, this court said: "If this line of evidence was properly received, a question which the record before us does not impose upon us the duty of determining, still its effectiveness and probative force is limited solely to the credibility of Degele. 'Evidence of such contradictory statements is admitted only to discredit the witness; it is not affirmative evidence of the facts stated.' " State ex rel. Nebraska State Bar Assn. v. Bachelor, 139 Neb. 253, 297 N. W. 138. See, also, 3 Jones, Evidence, Civil Cases (4th ed.) 1591, quoted with approval in State ex rel. Nebraska State Bar Assn. v. Bachelor, *supra*.

We hold that the offense charged is not supported by sufficient corroborative evidence to sustain a conviction. Defendant's motion to dismiss made at the close of all the evidence should have been sustained. The judgment of the district court is reversed and the cause remanded to the district court with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.