STATE OF NEBRASKA, APPELLEE, V. JOHN W. YELLI, APPELLANT.
530 N.W.2d 250

Filed April 7, 1995.   No. S-94-206.

John Jedlicka, Holt County Public Defender, for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The plaintiff-appellee, State of Nebraska, charged the defendant-appellant, John W. Yelli, with two counts of criminal nonsupport of two minor children, in violation of Neb. Rev. Stat. § 28-706 (Reissue 1989). More specifically, the State claims that Yelli failed to make the support payment he was previously ordered to make in each of two separate state-initiated civil paternity actions in which he was determined to be the father of the minor who was the subject of each action. Pursuant to verdict, the district court adjudged Yelli guilty as charged and imposed sentence. Yelli then appealed to the Nebraska Court of Appeals, urging that as there had been no showing that he had either been represented by or waived counsel in the paternity actions, the district court erred in receiving the prior adjudications in evidence over his objection. The Court of Appeals agreed and thus vacated the judgment of the district court. *State v. Yelli*, 3 Neb. App. 148, 524 N.W.2d 353 (1994). The State thereafter successfully petitioned this court for further review, asserting, in summary, that the Court of Appeals erroneously (1) ruled the prior adjudications to have been inadmissible, (2) concluded that the evidence did not otherwise support the verdicts, and (3) determined to vacate the judgment of the district court. We now modify, and as modified affirm, the judgment of the Court of Appeals.

## II. SCOPE OF REVIEW

A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994). However, an appellate court has an obligation to reach conclusions of law independent of those of the inferior courts. See *Jindra v. Clayton, ante* p. 597, 529

N.W.2d 523 (1995).

## III. FACTS

In addition to the evidence detailed in part I above, the mother of one of the minors in question testified that her child was born on November 12, 1982; that although she had never been married to Yelli, she engaged in sexual intercourse with him at some unspecified time; and that Yelli was her child's father. This mother further testified, over Yelli's objection, that she had been involved in a prior paternity adjudication and that Yelli was ordered to pay child support.

The mother of the other minor testified that the child was born on January 22, 1986. This second mother also testified that although she had never married Yelli, he was her child's father. Over Yelli's objection, she testified in addition that the court previously had determined that Yelli was the child's father and had ordered him to pay child support.

## IV. ANALYSIS

Section 28-706(1) provides: "Any person who intentionally fails, refuses, or neglects to provide proper support which he or she knows or reasonably should know he or she is legally obliged to provide to a . . . minor child . . . commits criminal nonsupport." The offense is a felony if the nonsupport is in violation of any order of any court, § 28-706(7); otherwise, the offense is a misdemeanor, § 28-706(6).

### 1. ADMISSIBILITY OF PRIOR ADJUDICATIONS

In the context of the charges in this case, the requirement of § 28-706(1) that one know or reasonably should know that one has an obligation to support a minor child makes an adjudication that Yelli is the father of the minor whose support is at issue an essential element of each of the crimes charged. In addition, the requirement of § 28-706(7) that there be in existence a court order directing support makes such order an essential element of the crime.

### (a) Noncollateral Attack

The State urges that Yelli cannot be permitted to collaterally attack the final adjudications of paternity and support entered in the prior civil paternity actions. Clearly, collateral attack on a

previous judgment is impermissible unless the attack is grounded upon lack of jurisdiction over the parties or subject matter. *VonSeggern v. Willman*, 244 Neb. 565, 508 N.W.2d 261 (1993); *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992); *Shade v. Kirk*, 227 Neb. 775, 420 N.W.2d 284 (1988); *State ex rel. Ritthaler v. Knox*, 217 Neb. 766, 351 N.W.2d 77 (1984); *State v. Reuter*, 216 Neb. 325, 343 N.W.2d 907 (1984); *Griffin v. Vandersnick*, 210 Neb. 590, 316 N.W.2d 299 (1982). Even if erroneous, a judgment is not subject to collateral attack unless it is void, such as would be the case where a judgment is entered without jurisdiction over the person or subject matter. *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 500 N.W.2d 566 (1993).

But a mere challenge to the admissibility of a prior judgment as evidence in a subsequent trial does not constitute an attack on the validity of the prior judgment. Yelli has not asserted that the courts entering the prior civil adjudications of paternity lacked jurisdiction, nor has he challenged the validity of the adjudications. Therefore, Yelli has not collaterally attacked the prior adjudications; he has simply objected to their admissibility as evidence of the essential elements of the criminal nonsupport charges filed against him.

### (b) No Issue or Claim Preclusion

With such distinction in mind, it is necessary to consider whether a prior civil adjudication of paternity and concurrent order of support are admissible in a subsequent criminal nonsupport trial as evidence of the elements of the criminal offense.

It must be borne in mind that in a civil action, only a preponderance of the evidence is necessary to sustain the establishment of paternity. *Gregory v. Davis*, 214 Neb. 408, 334 N.W.2d 1 (1983); *Snay v. Snarr*, 195 Neb. 375, 238 N.W.2d 234 (1976); Neb. Rev. Stat. § 43–1412 (Reissue 1993). In contrast, the burden in a criminal proceeding is to produce proof beyond a reasonable doubt of every element of a charged offense. *State v. McHenry, ante* p. 167, 525 N.W.2d 620 (1995).

Traditionally, judgments have been regarded as hearsay and

not within any exception to the hearsay rule; a prior judgment is hearsay, since it is based on the opinion of a judge or jury consisting of persons who have not been cross–examined and have no personal knowledge of the underlying facts. Hiroshi Motomura, *Using Judgments as Evidence*, 70 Minn. L. Rev. 979 n.4 (1986), citing 4 Jack B. Weinstein & Margaret A. Berger, ·Weinstein's Evidence ¶ 803(22)[01] (1995). Courts had therefore been unwilling to admit prior judgments into evidence. McCormick on Evidence § 298 (John W. Strong 4th ed. 1992). As a consequence, doctrines of claim and issue preclusion, res judicata, and collateral estoppel have developed, which allow for the admission of prior judgments in a subsequent proceeding.

However, the doctrines of res judicata and collateral estoppel are not applicable when the burden of persuasion is different in the subsequent proceeding. See 18 Charles A. Wright et al., Federal Practice and Procedure § 4422 (1981). Consequently, a party who has carried the burden of establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard. *Id.*

Restatement (Second) of Judgments § 28 at 273 (1982) provides:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> . . . [.]
>
> (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action.

To apply issue preclusion in the cases described in subsection (4) of the Restatement would be to hold, in effect, that the losing party in the first action would also have lost had a significantly different burden been imposed. The Restatement,

*supra*, comment *f*. While there may be many occasions when such a holding would be correct, there are many others in which the allocation and weight of the burden of persuasion (or burden of proof) are critical in determining who should prevail. *Id*. Since the process by which the issue was adjudicated cannot be reconstructed on the basis of a new and different burden, preclusive effect is properly denied. *Id*. See, *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991) (a judgment for fraud won by preponderance of evidence standard would not support preclusion in proceedings to establish nondischargeability if standard in subsequent bankruptcy proceedings required proof by clear and convincing evidence); *In re Braen*, 900 F.2d 621 (3d Cir. 1990), *cert. denied* 498 U.S. 1066, 111 S. Ct. 782, 112 L. Ed. 2d 845 (1991) (issue preclusion not available if state jury finding of malicious intent based on preponderance of evidence rested on lower standard of proof than judgment creditor must meet in establishing malice to avoid discharge of debt in bankruptcy); *General Dynamics Corp. v. American Tel. & Tel. Co.*, 650 F. Supp. 1274 (N.D. Ill. 1986) (changes in burden of proof may defeat collateral estoppel).

Thus, we have held that an acquittal or dismissal in a prior criminal prosecution is no bar to the prosecution of a later civil action, and such acquittal or dismissal concludes no issues in a later civil action. *State ex rel. Douglas v. Morrow*, 216 Neb. 317, 343 N.W.2d 903 (1984). Similarly, in *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992), we determined that because of the different standards of proof, a parent's conduct may be grounds for a juvenile court to acquire jurisdiction notwithstanding that the parent was acquitted of a criminal charge for conduct detrimental to the child.

Therefore, the doctrines of res judicata and collateral estoppel are not applicable as bases for the admission of prior civil judgments in a subsequent criminal trial. Specifically, the judgment in a civil paternity action is not binding under the doctrines of res judicata or collateral estoppel in a subsequent criminal case. *Nordgren v. Mitchell*, 716 F.2d 1335 (10th Cir. 1983).

However, as suggested in *Carroll v. Moore*, 228 Neb. 561, 423 N.W.2d 757 (1988), *cert. denied* 488 U.S. 1019, 109 S. Ct.

817, 102 L. Ed. 2d 807 (1989), because the burdens of proof would be the same, a judgment in a civil paternity adjudication is res judicata as between the same parties in a subsequent civil action such as a support modification proceeding. See, *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994); *Callison v. Naylor*, 108 N.M. 674, 777 P.2d 913 (N.M. App. 1989); *Spindlow v. Spindlow*, 512 So. 2d 918 (Ala. App. 1987), *cert. denied* 512 So. 2d 921; *State ex rel. Mart v. Mart*, 380 N.W.2d 604 (Minn. App. 1986); *Hackley v Hackley*, 426 Mich. 582, 395 N.W.2d 906 (1986); *In re Marriage of Detert*, 391 N.W.2d 707 (Iowa App. 1986); *McCrary v. McCrary*, 408 So. 2d 523 (Ala. App. 1981).

### (c) Not Otherwise Reliable

Therefore, we must determine whether the prior civil adjudications are admissible in this instance notwithstanding that the doctrines of res judicata or collateral estoppel do not apply.

Although a judgment is technically hearsay, for which no specific exception is provided, courts have nonetheless admitted judgments as evidence in subsequent proceedings when the prior judgment possessed the evidentiary reliability that the hearsay rule seeks to promote. See *Eagle, etc., Ins. Co. v. Heller*, 149 Va. 82, 140 S.E. 314 (1927) (prior criminal conviction for arson admissible in subsequent civil action to determine whether insured could recover under fire insurance policy). See, also, *Williams v. Bennett*, 689 F.2d 1370 (8th Cir. 1982), *cert. denied* 464 U.S. 932, 104 S. Ct. 335, 78 L. Ed. 2d 305 (1983); *Indiana State Highway Commission v. Rickert*, 425 N.E.2d 620 (Ind. 1981).

The hearsay rule is directed against the danger that evidence which is untested by the traditional conditions present when a witness testifies at trial will be unreliable because faults in the perception, memory, and narration of the declarant will not be exposed. 4 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence ¶ 800[01] (1995). Historically, three conditions are believed to cause the witnesses to be accurate and to expose inaccuracies in perception, memory, or narration when a witness testifies at trial: the oath, personal presence at

the trial, and cross–examination. *Id.*; McCormick on Evidence § 245 (John W. Strong 4th ed. 1992).

When these conditions are not met, the traditional indicia of reliability are lacking, and such evidence is inadmissible unless there are equivalent guarantees of trustworthiness. Neb. Evid. R. 803(22), Neb. Rev. Stat. § 27–803(22) (Reissue 1989). See, *In re Estate of Schoch*, 209 Neb. 812, 311 N.W.2d 903 (1981) (reliability of witness' testimony that hearsay statement was made not to be considered in deciding admissibility; consideration is circumstantial guarantees of trustworthiness of statement being reported); *United States v. American Tel. & Tel. Co.*, 498 F. Supp. 353 (D.C. 1980) (rationale for admissibility of factual findings contained in public records is their fundamental trustworthiness); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir. 1978) (dangers inherent in hearsay testimony can be obviated by requirement that such statements be trustworthy and necessary); *Sabatino v. Curtiss National Bank of Miami Springs*, 415 F.2d 632 (5th Cir. 1969), *cert. denied* 396 U.S. 1057, 90 S. Ct. 750, 24 L. Ed. 2d 752 (1970) (evidence must be necessary and exhibit intrinsic probability of trustworthiness); *Mid–City Bank & Trust Co. v. Reading Co.*, 3 F.R.D. 320 (D.N.J. 1944) (rules of evidence designed to obtain truth and intended to exclude unreliable testimony).

Typically, the circumstances surrounding a civil adjudication support the reliability of the judgment. Therefore, we have admitted evidence concerning prior civil adjudications in subsequent criminal proceedings even though such prior judgments were not received as conclusive proof of the issue in question. Evidence of prior civil adjudications has been admitted in a subsequent criminal nonsupport proceeding to establish the defendant's obligation to support the child. *State v. Menuey*, 239 Neb. 513, 476 N.W.2d 846 (1991); *State v. Beck*, 238 Neb. 449, 471 N.W.2d 128 (1991); *State v. Bright*, 238 Neb. 348, 470 N.W.2d 181 (1991); *State v. Meyer*, 236 Neb. 253, 460 N.W.2d 656 (1990); *State v. Eichelberger*, 227 Neb. 545, 418 N.W.2d 580 (1988); *State v. McGee*, 221 Neb. 557, 378 N.W.2d 674 (1985); *State v. McKichan*, 219 Neb. 560, 364 N.W.2d 47 (1985); *State v. Reuter*, 216 Neb. 325, 343 N.W.2d 907 (1984); *State v. Munn*, 212 Neb. 265, 322 N.W.2d 429 (1982); *State v. Englehaupt*, 210 Neb. 182, 313 N.W.2d 437

(1981).

Similarly, other jurisdictions have determined that evidence of a prior civil adjudication of paternity is admissible against the defendant in a subsequent criminal nonsupport proceeding. However, in such jurisdictions the defendant is not estopped from denying paternity in the subsequent criminal proceeding. Thus, the prior civil adjudications are admitted as nonconclusive evidence of the defendant's support obligation. See, *State v. Hoy*, 742 S.W.2d 206 (Mo. App. 1987) (due process violated in criminal nonsupport action when court denied defendant's pretrial request for blood tests to contest paternity due to preclusive effect given to civil decree of dissolution); *County of El Dorado v. Schneider*, 191 Cal. App. 3d 1263, 237 Cal. Rptr. 51 (1987) (prior adjudication of paternity would not allow trial court to withhold question of paternity from jury); *Patterson v. Municipal Court*, 232 Cal. App. 2d 289, 42 Cal. Rptr. 769 (1965) (interlocutory divorce decree determining husband was father of child not res judicata against husband in subsequent prosecution for nonsupport).

However, in the present case, the prior paternity adjudications lack reliability because they do not affirmatively show that Yelli was represented by or waived his right to counsel. Recognizing the risk of error should an indigent paternity defendant go unrepresented, that counsel was necessary to inform the defendant of his right to a jury trial as well as his right to blood testing, and that the use of scientific evidence involved in blood testing contributed to the complexity of the litigation and the risk of error when the defendant was unassisted, we, in *Carroll v. Moore*, 228 Neb. 561, 423 N.W.2d 757 (1988), *cert. denied* 488 U.S. 1019, 109 S. Ct. 817, 102 L. Ed. 2d 807 (1989), concluded that both federal and state due process dictate that an indigent defendant in a state–assisted paternity action has the right to the services of appointed counsel.

Where a record is silent as to a defendant's opportunity for counsel, an appellate court may not presume that such rights were respected. *State v. Ristau*, 245 Neb. 52, 511 N.W.2d 83 (1994); *State v. Smith*, 213 Neb. 446, 329 N.W.2d 564 (1983).

Since the record in the prior paternity adjudications is silent,

we cannot assume that Yelli was represented by or waived his right to counsel in the prior paternity proceedings. When a paternity defendant is denied the opportunity for the assistance of counsel in a state–initiated paternity proceeding, the risk of error is substantial. Such an uncounseled paternity adjudication lacks the circumstantial guarantees of trustworthiness that other judgments possess. Therefore, a civil paternity adjudication obtained in a state–initiated proceeding in which the defendant was denied the right to counsel lacks the reliability that warrants its admission in a criminal proceeding.

It necessarily follows therefrom that the adjudications in the prior civil paternity actions should not have been received in evidence in this proceeding, and the mothers should not have been permitted to testify concerning them. There is thus no merit to the State's first assignment of error.

## 2. SUFFICIENCY OF OTHER EVIDENCE

Next, the State urges that even without proof of the prior determinations of paternity and orders of support, there existed sufficient evidence to support the jury's verdict. However, that contention overlooks that excluding any evidence of the prior adjudications, the record consists of nothing more than the uncorroborated testimony of each minor's mother that Yelli was the father. A mother's testimony that one is the father of her child is sufficient only if she be corroborated as to material facts and circumstances which tend to support her testimony and from which, together with her testimony as to the principal act, the inference of paternity may be drawn. § 43–1412. See, *Wade v. Hicks*, 191 Neb. 847, 218 N.W.2d 222 (1974); *Lockman v. Fulton*, 162 Neb. 439, 76 N.W.2d 452 (1956); *State ex rel. Klostermeier v. Klostermeier*, 161 Neb. 247, 72 N.W.2d 848 (1955). Here, there was nothing which corroborated the mothers' bald assertions of paternity; the mothers' testimony is thus insufficient to establish paternity and the resulting obligation to pay.

As a consequence, there was a complete failure of proof to support the charges against Yelli, and there is no merit to the State's second assignment of error.

### 3. VACATION OF JUDGMENT

The State reads the judgment of the Court of Appeals to mean that the within cause has been dismissed. Although it is not entirely clear to us that the mere vacation of the district court's judgment achieves that end, we determine that such is indeed the result which must obtain.

It is clear that the Double Jeopardy Clauses of the federal and state Constitutions forbid a second trial for the purpose of affording the prosecution another opportunity · to supply evidence which it failed to muster in the first proceeding. *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); *State v. Bostwick*, 222 Neb. 631, 385 N.W.2d 906 (1986). Thus, while the Double Jeopardy Clauses do not protect against a second prosecution for the same offense where a conviction is reversed for trial error, they bar retrial if the reversal is necessitated because the evidence was legally insufficient to sustain the conviction. *Burks v. United States, supra*; *Palmer v. Grammer*, 863 F.2d 588 (8th Cir. 1988), *appeal after remand, Palmer v. Clarke*, 961 F.2d 771 (8th Cir. 1992); *State v. Lenz*, 227 Neb. 692, 419 N.W.2d 670 (1988); *State v. Palmer*, 224 Neb. 282, 399 N.W.2d 706 (1986), *cert. denied* 484 U.S. 872, 108 S. Ct. 206, 98 L. Ed. 2d 157 (1987).

The third and last of the State's assignments of error is therefore also meritless.

### V. JUDGMENT

Accordingly, we modify the judgment of the Court of Appeals as hereinafter stated and as thus modified affirm it; the cause is remanded to the Court of Appeals with the direction that it reverse the judgment of the district court and remand the cause to that court with the direction that it dismiss the within action.

AFFIRMED AS MODIFIED.

CONNOLLY, J., not participating.