STATE OF NEBRASKA, APPELLEE, V. FERNANDO JIMENEZ,
APPELLANT.

533 N.W.2d 913

Filed June 23, 1995. No. S-94-344.

Michael W. Meister, of Meister & Segrist, for appellant.

Don Stenberg, Attorney General, and David K. Arterburn for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

CAPORALE, J.

Pursuant to verdict, the defendant–appellant, Fernando Jimenez, was convicted in the district court of delivering a controlled substance, marijuana, in violation of the Nebraska Uniform Controlled Substances Act, Neb. Rev. Stat. §§ 28–401 through 28–445 (Reissue 1989 & Cum. Supp. 1992), more specifically §§ 28–405(c)(10) [Schedule I] and 28–416(1)(a). He then challenged his conviction in the Nebraska Court of

Appeals, which reversed the judgment of the district court and remanded the matter for a new trial. *State v. Jimenez*, 3 Neb. App. 421, 530 N.W.2d 257 (1995). Jimenez and the plaintiff–appellee, State of Nebraska, each successfully petitioned for further review, with Jimenez asserting, among other things, that the Court of Appeals wrongly ruled that the district court correctly found the evidence supported the conviction. That claim of error having merit, we now, without passing upon the various other issues treated by the Court of Appeals, modify its judgment by requiring that it remand the cause to the district court for dismissal, and as so modified, we affirm the judgment of the Court of Appeals.

We begin our review by recalling that a verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support the verdict. *State v. Yelli*, 247 Neb. 785, 530 N.W.2d 250 (1995); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

The record establishes that in exchange for a reduced charge for his having delivered marijuana, Daniel Hubbard agreed to cooperate in police investigations. Hubbard identified Jimenez as a person from whom he could buy drugs and described where he thought Jimenez lived. As a consequence, on January 21, 1993, Officer Robert Greer of the Gering Police Department and Det. Mark Overman of the Scottsbluff Police Department arranged to follow Hubbard to Jimenez' reported residence where Hubbard was to attempt to buy marijuana from Jimenez while Overman and Greer recorded the transaction through a radio transmitter attached to Hubbard's body. Before proceeding, Greer searched the automobile Hubbard was to use, and Overman, after searching Hubbard, installed the body transmitter on Hubbard. Overman also noted how much money Hubbard had with him, provided him with $100 with which to purchase the drug, and recorded the serial numbers of the bills.

Hubbard then departed in his automobile; Greer and Overman followed in a police vehicle. Hubbard drove to a four–plex apartment building which Overman had previously determined to match the description Hubbard gave the police as containing Jimenez' residence and parked across the street. Greer saw Hubbard walk from his vehicle toward the apartment

building, and Greer then parked the police vehicle a block away. At that time, Overman activated the recorder.

Although Overman saw Hubbard walk toward the apartment building, Overman did not see Hubbard go into any of the apartments; he only saw Hubbard walking in the street toward the building. When Overman had first checked the address of the residence, he found that the utilities were listed in the name of a woman he thought to be Jimenez' mother. However, his notes did not identify the person to whom the utilities were listed, and he neither knew the name of the person he believed to be Jimenez' mother nor recalled why he had believed that this person was Jimenez' mother. He simply could not explain why he believed as he did. While Overman had seen Jimenez in the apartment area at various times, Overman did not see Jimenez on January 21, 1993. Neither could Greer verify that Jimenez was present in the apartment Hubbard entered on January 21.

According to Hubbard's testimony, he entered the four–plex and knocked on the door of an apartment, after which someone let him in. Several people were in the apartment, but he recognized Jimenez and Jimenez' brother and mother. Because Jimenez was talking on the telephone, Hubbard sat in the living room with the brother until Jimenez finished his telephone conversation. He and Jimenez then went to Jimenez' bedroom where Hubbard asked Jimenez if he "had any smoke." Jimenez responded "yes" and "pulled out two quarters." Hubbard described a "quarter" as being 7 grams of marijuana. He paid Jimenez $90 for the marijuana and left a couple of minutes later, driving to the police parking lot, with Greer and Overman following.

Upon arrival at the parking lot, Hubbard gave Overman two bags of marijuana. Overman again searched Hubbard and recovered $10 of the $100 that Overman had originally provided; however, none of the money provided Hubbard was found in Jimenez' possession.

The State played the tape recording of the purchase while Hubbard explained what transpired at certain points. Hubbard identified the various voices on the tape as his own and those of Jimenez and Jimenez' brother and mother. At the beginning of the tape, following some knocking sounds, Hubbard is heard to

ask whether "Fernando" was around and was admitted, and at another point, Hubbard states that he is waiting for Fernando. However, the conversation during the actual purchase transpired between "Bud" and "Dude."

Neb. Rev. Stat. § 28-1439.01 (Cum. Supp. 1994) provides: "No conviction for an offense punishable under any provision of the Uniform Controlled Substances Act shall be based solely upon the uncorroborated testimony of a cooperating individual." The requirement of corroboration in this section does not operate to exclude testimony which is not corroborated by other evidence; rather, it only requires that the conviction be based on something more than only such testimony. *State v. Beckner*, 211 Neb. 442, 318 N.W.2d 889 (1982).

> "A corroboration requirement does not mean that a commissioned law enforcement agent would have to be physically present at the time a drug purchase is made. Corroboration could be supplied, by instance, through the use of electronic surveillance, observations which indicate simply that the meeting between the subject and the cooperating individual actually took place, searches of the cooperating individuals both before and within a reasonable time after the drug purchase is alleged to have taken place, the use of marked buy money, the use of cooperating individuals in teams, the use of fingerprint analysis and numerous other investigative techniques."

211 Neb. at 446-47, 318 N.W.2d at 892-93.

Corroboration is sufficient, for purposes of § 28-1439.01, if the witness is corroborated as to material facts and circumstances which tend to support the testimony as to the principal fact in issue. *State v. Cain*, 223 Neb. 796, 393 N.W.2d 727 (1986); *State v. Taylor*, 221 Neb. 114, 375 N.W.2d 610 (1985).

We have held that corroboration may be supplied by observation that a meeting between the subject and a cooperating individual actually took place and by searches of the cooperating individual both before and within a reasonable time after the drug purchase took place. *State v. Knoefler*, 227 Neb. 410, 418 N.W.2d 217 (1988).

The principal fact at issue here obviously is the identity of

the person who sold the marijuana to Hubbard. Thus, the relevant inquiry is whether there was corroboration for Hubbard's identification of Jimenez as the person who sold Hubbard the marijuana on January 21, 1993.

When the law requires corroboration of a witness, the witness' testimony must be accompanied by evidence other than that from the witness. *State v. Witmer*, 174 Neb. 449, 118 N.W.2d 510 (1962); *Peery v. State*, 163 Neb. 628, 80 N.W.2d 699 (1957).

Jimenez argues that there is insufficient corroboration because there is no evidence, other than Hubbard's testimony, which identifies Jimenez as the person who sold Hubbard the marijuana on January 21, 1993. Jimenez contends that the tape recording does not corroborate Hubbard's testimony because it does not independently identify Jimenez; there is only Hubbard's testimony that one of the voices belongs to Jimenez.

It is true that in *State v. Loveless*, 209 Neb. 583, 308 N.W.2d 842 (1981), this court, with one member dissenting and two others concurring without comment, approved the admission into evidence, for the purpose of impeaching a defendant, of an only partially audible audiotape recording, together with a transcription of its contents. However, unlike the situation presented here, neither was the identity of the defendant at issue nor was the evidential value of the recording dependent upon the word of a cooperating individual.

Here, everything which ties Jimenez to the events recorded on the tape depends on Hubbard's testimony: Hubbard identified Jimenez as the person from whom drugs could be purchased, Hubbard identified the building Overman saw Hubbard approach as containing Jimenez' residence, and only Hubbard identified Jimenez' voice on the recording. Indeed, although Overman testified that he talked with Jimenez sometime in October, there is no testimony that the voice Overman heard on that occasion matched the taped voice identified by Hubbard as belonging to Jimenez. Neither was any attempt made to otherwise identify the seller's voice or to obtain fingerprints from the bag containing the drugs Hubbard surrendered to the police.

The fact that an officer had seen Jimenez in the area of the

apartment at other times does not establish that Jimenez was in the apartment with Hubbard at the time the drug purchase took place. And while the references in the tape to "Fernando" may suggest that someone named Fernando was at least being sought, they neither alone nor combined with the fact that Jimenez had been seen in the area at other times establish that the Fernando referred to is the Fernando Jimenez in question.

It is the prosecution's burden in a criminal case to produce proof beyond a reasonable doubt of every element of a charged offense. See *State v. Yelli*, 247 Neb. 785, 530 N.W.2d 250 (1995). Having failed to corroborate Hubbard's identification of Jimenez as the seller of the drug, the State has failed to satisfy its burden. Since the evidence is legally insufficient to sustain the conviction, the charge against Jimenez may not be retried, and the cause must be dismissed. See *id.*

Accordingly, we modify the judgment of the Court of Appeals as set forth in the first paragraph of this opinion and, as so modified, affirm it.

AFFIRMED AS MODIFIED.