STATE OF NEBRASKA, APPELLEE,
v. KEVIN GOODRO, APPELLANT.
556 N.W.2d 630

Filed December 13, 1996.   No. S-96-119.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Don Stenberg, Attorney General, and Joseph P. Loudon for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

LANPHIER, J.

Following a bench trial, appellant Kevin Goodro was convicted in the district court for Hall County, Nebraska, of three counts of distribution of methamphetamine and one count of possession of methamphetamine, pursuant to Neb. Rev. Stat. § 28-416 (Cum. Supp. 1994). He appealed his convictions to the Nebraska Court of Appeals, assigning as error that there was insufficient evidence to support the convictions. More specifically, Goodro alleges that the convictions were based on the uncorroborated testimony of a cooperating individual, contrary to Neb. Rev. Stat. § 28-1439.01 (Reissue 1995). We granted the State's petition to bypass. We now determine that this assignment of error is without merit, and we affirm the judgment of the district court.

## BACKGROUND

In March and April 1995, Christina S. Nyman worked as a confidential informant for Deputy Christopher Rea of the Hall County sheriff's office. Nyman had sold methamphetamine on two occasions and was allowed to obtain dismissal of pending criminal charges by making drug "buys" for law enforcement officers. After all pending charges had been "worked off" and therefore dismissed, Nyman received $50 for each "buy" she made.

As a confidential informant, Nyman arranged to buy methamphetamine from Steve Shum on April 6, 1995. Prior to this controlled buy, officers searched Nyman, her purse, and her car. No controlled substances were found. Nyman was equipped, prior to the purchase, with an audio transmitter ("wire"), which allowed conversations to be overheard and tape-recorded by Deputy Rea.

Nyman then went to a residence at an address provided by Shum. She met Shum at the door when he answered her knock. Nyman was then introduced to Goodro inside the residence. Upon entering, Nyman stated that she wanted to buy an "eight-ball" of methamphetamine. She gave Shum $250. According to Nyman, Shum then gave the money to Goodro. Nyman further testified that Goodro left the residence, returned, and laid the methamphetamine on a table. Shum then picked up the methamphetamine and handed it to Nyman.

Nyman asked to purchase more methamphetamine that same night and arranged an additional buy with Goodro. Nyman left the residence, met with officers, turned over the methamphetamine, and obtained more money for the next buy. Nyman returned to the residence, met Goodro, and gave him the money. Nyman testified that Goodro left the residence, and then she left the residence. Nyman was given the additional methamphetamine upon her return. Nyman then arranged for a buy the next evening, April 7, 1995. Goodro gave her his name and beeper number. After Nyman left the residence, she was searched and "unwired," and she gave the methamphetamine to an officer.

The next day, April 7, 1995, Nyman was again searched, wired, and given money by the police prior to attempting the buy. She returned to the same residence she had gone to the night before. She testified that after entering, she gave Goodro $250. Nyman, and then Goodro, left the residence. Nyman met with officers and then returned to the residence, where Goodro gave her the methamphetamine. Nyman left the residence and was subsequently searched, unwired, and relieved of the methamphetamine by the officers.

The State introduced testimony of Deputy Rea and Det. Elmer Edwards and the tape recordings of the methamphetamine purchases. Deputy Rea testified that he heard via the wire a conversation between two male voices and one female voice. He also testified that he received the methamphetamine from Nyman. The tapes of the conversations of April 6 and 7, 1995, were received into evidence over a foundational objection. Deputy Rea testified that he recognized Goodro's voice on both tapes.

Detective Edwards assisted Deputy Rea with the surveillance operation pertaining to the alleged purchases of methamphetamine. Detective Edwards testified that on both April 6 and 7, 1995, he searched Nyman's car prior to the buy and then followed Nyman to the residence. He testified that he watched Nyman arrive at and enter the residence and that he observed Goodro come out of the residence and leave in a van. Detective Edwards testified that he then observed Goodro returning and watched him exit the van and enter the residence. Detective

Edwards then observed Nyman leaving the residence, getting into her vehicle, and driving away. Detective Edwards then followed Nyman to a predesignated location set up by officers and again searched her car.

On May 21, 1995, Detective Edwards served Goodro with a warrant and advised him that he was under arrest. In response to a question by Detective Edwards, Goodro stated that he had drugs on his person and handed the detective what appeared to be methamphetamine after pulling it out of his left breast pocket.

By an information filed in the district court for Hall County on August 9, 1995, Goodro was criminally charged with three counts of distribution of methamphetamine and one count of possession of methamphetamine, pursuant to § 28-416.

Following a bench trial on October 6, 1995, Goodro was found guilty of all four charges. The court specifically found corroboration from the testimony of both Detective Edwards and Deputy Rea and also from the tapes. Goodro was sentenced to 3 to 4 years' imprisonment on counts I, II, and III (the distribution charges) and to 12 to 14 months' imprisonment on count IV (the possession charge). All sentences were to run concurrently.

## ASSIGNMENT OF ERROR

Goodro assigns as error "[t]he sufficiency of the evidence to support the verdict on Counts I, II, and III, all Distributions of a Controlled Substance."

## STANDARD OF REVIEW

A conviction in a bench trial of a criminal case is sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. *State v. Carpenter*, 250 Neb. 427, 551 N.W.2d 518 (1996); *State v. Masters*, 246 Neb. 1018, 524 N.W.2d 342 (1994); *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994); *State v. Hand*, 244 Neb. 437, 507 N.W.2d 285 (1993).

In a bench trial of a criminal case, the trial court's findings have the effect of a verdict and will not be set aside unless clearly erroneous. *State v. Conklin*, 249 Neb. 727, 545 N.W.2d 101 (1996); *State v. Masters, supra*; *State v. Secret, supra*.

## ANALYSIS

Goodro asks us to overturn his convictions of three counts of distribution of methamphetamine due to a lack of corroboration of Nyman's testimony. Goodro cites § 28-1439.01, which provides that "[n]o conviction for an offense punishable under any provision of the Uniform Controlled Substances Act shall be based solely upon the uncorroborated testimony of a cooperating individual."

A cooperating individual is defined as "any person, other than a commissioned law enforcement officer, who acts on behalf of, at the request of, or as agent for a law enforcement agency for the purpose of gathering or obtaining evidence of offenses punishable under the Uniform Controlled Substances Act." Neb. Rev. Stat. § 28-401(33) (Reissue 1995). There is no question that Nyman is a cooperating individual. She participated with law enforcement officers in setting up the transaction; she obtained evidence; she was allowed to work off pending charges; and, after the charges were worked off, she was paid compensation for her services.

A corroboration requirement does not operate to exclude testimony which is not corroborated by other evidence; it only requires that such conviction be based on something more than such testimony. *State v. Jimenez*, 248 Neb. 255, 533 N.W.2d 913 (1995).

> "'A corroboration requirement does not mean that a commissioned law enforcement agent would have to be physically present at the time a drug purchase is made. Corroboration could be supplied, by instance, through the use of electronic surveillance, observations which indicate simply that the meeting between the subject and the cooperating individual actually took place, searches of the cooperating individuals both before and within a reasonable time after the drug purchase is alleged to have taken place, the use of marked buy money, the use of cooperating individuals in teams, the use of fingerprint analysis and numerous other investigative techniques.'"

*Id.* at 258, 533 N.W.2d at 916 (quoting *State v. Beckner*, 211 Neb. 442, 318 N.W.2d 889 (1982). See, also, *State v. Knoefler*, 227 Neb. 410, 418 N.W.2d 217 (1988).

The principal fact in issue is whether Goodro is the person who sold the methamphetamine to Nyman. Therefore, the essential inquiry is whether Nyman's testimony identifying Goodro as the person who sold her the methamphetamine was corroborated by the audiotapes and the actions and observations of the two officers.

When the law requires corroboration of a witness, the witness' testimony must be accompanied by evidence other than that from the witness. *State v. Jimenez, supra; State v. Witmer*, 174 Neb. 449, 118 N.W.2d 510 (1962).

Goodro argues that the evidence was not sufficient to sustain his conviction on the distribution charges because no corroboration existed identifying Goodro as the seller of the methamphetamine. Goodro contends that the tape recording does not corroborate Nyman's testimony because, although Goodro's voice appears on the tape, there is no identification of Goodro as the person who actually gave or sold Nyman the drugs. Here, however, sufficient evidence exists which ties Goodro to the distribution of the methamphetamine, and such evidence does not depend solely on Nyman's testimony.

Nyman and her car were searched both before and within a reasonable time after the purchase; no methamphetamine was found. The use of electronic surveillance provided officers with tapes indicating that a meeting between two males and one female (Nyman) took place. Detective Edwards testified that he watched Nyman arrive at and go inside the residence, saw Goodro leave in his van, and watched him return and enter the residence. Deputy Rea testified that he had become personally familiar with Goodro in the course of the investigation and that Goodro's voice appeared on the tapes. On the tape recordings, a person is heard introducing himself as "Kevin," stating that his last name is "Goodro," and spelling the name. After leaving the residence, Nyman did have the methamphetamine, which was taken from her by the officers. All of this evidence corroborates that Goodro was in the residence with Nyman during the time the drug transaction took place. The physical evidence of the methamphetamine, the tape recordings, and the testimony of the State's witnesses support Nyman's testimony that she purchased the methamphetamine from Goodro.

Goodro argues that the State must provide corroboration as to the principal fact in issue: whether Goodro actually sold or gave the methamphetamine to Nyman. The testimony of a corroborating individual, however, need not be corroborated on every element of the crime. *State v. Kramer*, 238 Neb. 252, 469 N.W.2d 785 (1991). We have held that corroboration is sufficient, for the purposes of § 28-1439.01, if the witness is corroborated as to material facts and circumstances which tend to support the testimony as to the principal fact in issue. *State v. Jimenez*, 248 Neb. 255, 533 N.W.2d 913 (1995); *State v. Cain*, 223 Neb. 796, 393 N.W.2d 727 (1986); *State v. Taylor*, 221 Neb. 114, 375 N.W.2d 610 (1985); *State v. Beckner, supra.* Here, the testimony of the two officers and the tape recordings themselves corroborate Nyman's testimony and tend to support the principal fact in issue that Goodro sold or gave Nyman the methamphetamine.

## CONCLUSION

Accordingly, there was sufficient evidence to support the convictions, and we therefore affirm the judgment of the district court.

AFFIRMED.