IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. JOHNSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
THOMAS A. JOHNSON, APPELLANT.

Filed May 6, 2014.    No. A-13-622.

Appeal from the District Court for Scotts Bluff County: RANDALL L. LIPPSTREU, Judge. Affirmed.

David S. MacDonald, Deputy Scotts Bluff County Public Defender, for appellant.

Jon Bruning, Attorney General, and George R. Love for appellee.

MOORE, PIRTLE, and RIEDMANN, Judges.

MOORE, Judge.

## INTRODUCTION

Thomas A. Johnson appeals from his convictions in the district court for Scotts Bluff County for two counts of distribution of hydrocodone, one count of distribution of methamphetamine, and one count of distribution of an imitation controlled substance. On appeal, he asserts that the testimony of a cooperating individual was insufficiently corroborated as required by statute, that he was prejudiced by the admission of hearsay testimony, and that the court imposed excessive sentences. Finding no merit to these asserted errors, we affirm.

## BACKGROUND

On January 31, 2013, the State filed an information in the district court, charging Johnson with count I, distribution of hydrocodone, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 2012), a Class III felony; count II, distribution of methamphetamine, in violation of § 28-416(1)(a), a Class II felony; count III, distribution of hydrocodone, in violation of

§ 28-416(1)(a), a Class III felony; and count IV, distribution of an imitation controlled substance, in violation of Neb. Rev. Stat. § 28-445 (Reissue 2008), a Class III misdemeanor.

A jury trial was held on May 28 and 29, 2013. The State offered testimony from three police officers, a cooperating individual, and two chemists. Various exhibits were received in evidence, including audio and video recordings from three separate controlled drug buys, photographs of substances purchased during those buys, and laboratory results from the analysis of those substances.

A drug task force conducted controlled drug buys from Johnson on April 30 and May 4 and 15, 2012, using a cooperating individual, Michael Gillespie. Officer Brandi Brunz, an investigator with the Scottsbluff Police Department assigned to the task force, explained that a controlled buy means that law enforcement controls everything about the buy, including the location, money, and how much of a narcotic is to be purchased by a cooperating individual. Audio recordings were made of all three buys, but video recordings were made only of the first and second buys.

The April 30, 2012, controlled buy took place near a trailer house located at a particular address in Scottsbluff, Nebraska, which Brunz identified as Johnson's address. On that occasion, officers met with Gillespie at the task force office in Gering, Nebraska; searched him to make sure he had no money, contraband, drugs, or weapons on his person; wired him for audio; provided him with $15, which he was to use to purchase five Vicodin pills; and drove him to Johnson's residence. Investigator James Jackson conducted the search of Gillespie and drove him to the buy. Brunz and another investigator drove separately and parked a block east of Johnson's trailer. Brunz videotaped the transaction, and the district court received both the video recording taken by Brunz and the audio recording from Gillespie's wire into evidence. Brunz observed Jackson's vehicle stop just west of Johnson's residence. Brunz then saw Gillespie exit the vehicle, approach Johnson's vehicle, have a conversation with the individual inside, and make some sort of exchange. Brunz saw Gillespie walk away from Johnson's vehicle and return to Jackson's vehicle, which then drove away. After the exchange, Brunz, Jackson, and Gillespie met in a secluded location, and Jackson gave Brunz a small bag containing five pills that appeared to be Vicodin based on their markings, color, and shape. Brunz sent one of the pills to the Nebraska State Patrol Criminalistics Laboratory for analysis and kept the four remaining pills in an evidence locker. The court received a photograph of the four pills retained by Brunz into evidence.

Prior to the May 4, 2012, controlled buy, Gillespie again met with task force members at the task force office, where he was searched and wired with a recorder. This time, Brunz provided Gillespie with $115, which he was to use to purchase 1 gram of methamphetamine and another five Vicodin pills. Jackson again drove Gillespie to Johnson's residence while Brunz parked in the same spot she had parked previously for surveillance. From her position, Brunz observed Gillespie walk toward Johnson's trailer until he disappeared from her view. A few minutes later, she observed Gillespie reappear from the west side of Johnson's residence and reenter Jackson's vehicle. Following this incident, Brunz met Jackson and Gillespie behind a furniture store, where Jackson provided Brunz a small bag containing a white crystal substance that looked like methamphetamine and five pills that appeared to be Vicodin. As with the previous buy, Brunz packaged one of the pills and the suspected methamphetamine, which she

- 2 -

sent to the laboratory for analysis, and retained the other four pills in her secure evidence closet. The district court received a photograph of the four pills retained by Brunz and copies of the audio and video recordings from the second controlled buy into evidence.

The preparations for the third controlled buy on May 15, 2012, were executed in the same manner as those for the previous buys, except on that occasion, Gillespie was given $300 to purchase an "8-ball" or 3½ grams of methamphetamine. Brunz' observations of this transaction were similar to her observations of the second controlled buy. Following the third buy, she again met Jackson and Brunz behind a furniture store, where Jackson gave her a bag of suspected methamphetamine. The district court received a photograph of the substance retrieved from Gillespie on May l5, as well as the audio recording of that transaction into evidence.

Following Johnson's arrest, Brunz accessed a system that allowed her to listen to recordings of telephone calls Johnson placed from jail. She listened to the first four or five calls made by Johnson from the date of his arrest. Brunz testified, "I could clearly tell that the voice speaking through those jail phone calls was the same voice I heard back in April and May of the year before on the audio recordings." At trial, Brunz identified Johnson's voice on the audio recordings from all three controlled buys. Brunz also testified that when Gillespie called to arrange the April 30, 2012, buy, Gillespie placed his telephone on speaker and Brunz recognized the voice she heard on the speaker as being the same voice she heard on the jail call recordings. Brunz testified that reference during one of the transactions to an "O" is common terminology for an ounce of methamphetamine.

Gillespie testified about his involvement in all three controlled buys. He testified that he contacted Johnson and asked for five Vicodin or hydrocodone pills, which he then purchased from Johnson on April 30, 2012. Gillespie's description of the preparations for the April 30 buy was consistent with Brunz' description. Gillespie testified that when he and Jackson reached Johnson's house, he got out of Jackson's vehicle, walked over to Johnson's vehicle, handed Johnson $15, and received five pills from Johnson, which Gillespie gave to Jackson. Gillespie also testified about his negotiations with Johnson prior to the second and third controlled buys, his interactions with the task force before and after each of those buys, and his purchase of substances from Johnson on those occasions. Gillespie identified Johnson's voice on the audio recording of all three controlled buys.

Jackson also testified about his involvement in the three controlled buys targeting Johnson. He described preparations for the buys, driving Gillespie to Johnson's residence, retrieving suspected drugs from Gillespie, and meeting with Brunz following each of the three buys. Jackson searched Gillespie before and after the first and third buys and did not find any extra money or contraband on Gillespie during any of those searches. Jackson testified that in searching Gillespie, he had Gillespie remove everything from his pockets, patted him down, and had him remove his shoes so that they could be checked. Another investigator searched Gillespie before and after the second buy. He did not find any contraband or extra money during his searches of Gillespie. This officer described a similar search process to that described by Jackson in his testimony.

The chemists who testified identified the pills purchased in the first and second buys as hydrocodone and the crystalline substance purchased during the second buy as methamphetamine. The substance purchased in the third buy did not contain a controlled

substance and was not identified by the chemist who analyzed it. The district court received the laboratory results of the analyses of the substances purchased from Johnson into evidence.

The jury found Johnson guilty of all four counts, which verdict was accepted by the district court.

Following a sentencing hearing, the district court entered an order on July 10, 2013, sentencing Johnson to imprisonment for 1 to 3 years on count I, distribution of hydrocodone; 4 to 6 years on count II, distribution of methamphetamine; 1 to 3 years on count III, distribution of hydrocodone; and 60 days on count IV, distribution of an imitation controlled substance. The court ordered that the sentences on counts II through IV be served concurrent to each other, but consecutive to the sentence on count I. The court gave Johnson 169 days' credit for time served against the concurrent sentences in counts II through IV. Johnson subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Johnson asserts that (1) Gillespie's testimony was insufficiently corroborated as required by statute, (2) he was prejudiced by the admission of hearsay testimony, and (3) the district court abused its discretion in sentencing him and imposed excessive sentences.

## STANDARD OF REVIEW

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011).

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *State v. Ramirez*, 287 Neb. 356, 842 N.W.2d 694 (2014). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.* It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts under Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2012), and the trial court's decision will not be reversed absent an abuse of discretion. *State v. Collins, supra*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Leibel*, 286 Neb. 725, 838 N.W.2d 286 (2013).

ANALYSIS

*Cooperating Individual.*

Johnson asserts that Gillespie's testimony was insufficiently corroborated as required by statute.

Neb. Rev. Stat. § 28-1439.01 (Reissue 2008) provides, "No conviction for an offense punishable under any provision of the Uniform Controlled Substances Act shall be based solely upon the uncorroborated testimony of a cooperating individual." Corroboration is sufficient, for the purpose of § 28-1439.01, if the witness is corroborated as to material facts and circumstances which tend to support the testimony as to the principal fact in issue. *State v. Kuta*, 12 Neb. App. 847, 686 N.W.2d 374 (2004). The testimony of a cooperating individual need not be corroborated on every element of a crime. *Id.* The Nebraska Supreme Court has stated, "A corroboration requirement does not operate to exclude testimony which is not corroborated by other evidence; it only requires that such conviction be based on something more than such testimony." *State v. Goodro*, 251 Neb. 311, 315, 556 N.W.2d 630, 633 (1996). The Nebraska Supreme Court has held that "corroboration may be supplied by observation that a meeting between the subject and a cooperating individual actually took place, coupled with searches of the cooperating individual both before and within a reasonable time after the drug purchase took place." *State v. Johnson*, 261 Neb. 1001, 1013, 627 N.W.2d 753, 763 (2001), citing *State v. Knoefler*, 227 Neb. 410, 418 N.W.2d 217 (1988). It has further held that "the evidence is legally insufficient to sustain a conviction when the State has failed to corroborate the testimony of a cooperating individual which identifies the defendant as the person involved in a distribution." *State v. Johnson*, 261 Neb. at 1013, 627 N.W.2d at 763, citing *State v. Jimenez*, 248 Neb. 255, 533 N.W.2d 913 (1995).

In this case, Gillespie was searched before and after each buy and was driven to Johnson's residence by Jackson. The record shows that these searches were more than pat searches as argued by Johnson. Gillespie was wired, audio recordings were made of each buy, and Brunz videotaped the first and second buys. Controlled substances were removed from Gillespie's person after the first and second buys, while an imitation controlled substance sold as methamphetamine was recovered following the third buy. These substances were retrieved from Gillespie shortly after each of the three transactions. Photographs of the substances retrieved from Gillespie were made and received in evidence. Brunz listened to recordings of telephone calls made by Johnson from jail and was able to identify Johnson's voice on the audio from all three buys. Brunz identified a reference to drug terminology in one of the audio recordings. There was sufficient corroboration. This assignment of error is without merit.

*Hearsay Testimony.*

Johnson asserts that he was prejudiced by the admission of hearsay testimony. Johnson's entire argument in support of this assignment of error consists of a quote from § 27-404(2) (admissibility of evidence of crimes, wrongs, or acts) and the statement that the court "allowed the State to introduce prior bad acts to attempt to corroborate the testimony of the CI." Brief for appellant at 15. Johnson does not identify the testimony he claims was admitted in error or explain how he was prejudiced. His argument is basically a restatement of his assignment of error. An argument that does little more than to restate an assignment of error does not support

the assignment, and an appellate court will not address it. *State v. Filholm*, 287 Neb. 763, ___ N.W.2d ___ (2014). We decline to further address Johnson's second assignment of error.

*Excessive Sentences.*

Johnson asserts that the district court abused its discretion in sentencing him and imposed excessive sentences.

Johnson was convicted in count I of a Class III felony and sentenced to 1 to 3 years' imprisonment, in count II of a Class II felony and sentenced to 4 to 6 years' imprisonment, in count III of a Class III felony and sentenced to 1 to 3 years' imprisonment, and in count IV of a Class III misdemeanor and sentenced to 60 days' imprisonmnet. The court ordered that the sentences for counts II through IV be concurrent to each other, but consecutive to the sentence on count I. Class II felonies are punishable by 1 to 50 years' imprisonment; Class III felonies are punishable by 1 to 20 years' imprisonment, a $25,000 fine, or both; and Class III misdemeanors are punishable by up to 3 months' imprisonment, a $500 fine, or both. See, § 28-416(1)(a); § 28-445; Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2012); Neb. Rev. Stat. § 28-106(1) (Cum. Supp. 2012). Thus, Johnson's sentences are well within the statutory guidelines.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Johnson was 49 years old at the time of sentencing. He has a 12th grade education and receives Social Security disability payments for a back injury. Johnson's criminal history includes convictions for driving while intoxicated, driving under suspension, assault, third degree assault, possession of drug paraphernalia, manufacturing methamphetamine, and conspiracy to manufacture methamphetamine. On the level of service/case management inventory, he was assessed as a medium-high risk to reoffend and scored in the medium range with respect to criminal history, leisure/recreation, and companions and in the high range with respect to alcohol/drug problem. On a substance abuse questionnaire, Johnson scored in the medium risk range on the violence scale, problem risk range on the alcohol scale, and in the maximum risk range on the drug scale.

It is clear that the district court considered the relevant factors in sentencing Johnson. The court noted Johnson's "extensive prior history of criminal and antisocial behavior" and his longtime involvement in using and/or dealing illegal drugs. The court stated that it had read and considered the presentence report as well as the statutory criteria and spoke to Johnson about the serious societal effect of drug-related crimes. We find no abuse of discretion in the sentences imposed upon Johnson.

## CONCLUSION

The testimony of the cooperating individual was sufficiently corroborated. Johnson's assignment of error concerning hearsay testimony is without merit. The court did not abuse its discretion in sentencing Johnson.

AFFIRMED.